**STEIN et al. v. UNITED STATES.**

No. 11268.

Circuit Court of Appeals, Ninth Circuit.

Feb. 27, 1948.

Rehearing Denied March 30, 1948.

Morris Lavine, of Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., and Norman W. Neukom, Asst. U. S. Atty. Chief of Criminal Division, all of Los Angeles, Cal., for appellee.

Before DENMAN, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This is an appeal from a conviction for a violation of the provisions of 21 U.S.C.A. § 174[1]. The narcotic drug in question is opium.

Appellant, Fred Stein, and one Margaret Brander were residing together as man and wife. A home was purchased with money provided by Fred Stein with title taken in the names of Fred Stein and Mrs. Fred Stein (Margaret Brander).

Margaret Brander observed Fred Stein, on different occasions, extract from a can a substance having a "sweetish" odor. This substance was placed by Fred Stein in water and boiled, then poured into a small bottle and the bottle deposited in a refrigerator. Twice daily Fred Stein consumed a teaspoonful of the liquid from the small bottle. Questioning by Margaret Brander elicited from Fred Stein the admission that he was a user of "dope". She remonstrated with him and finally exacted a promise that he would discontinue its use. Some time later she (Margaret) learned that Fred was continuing the use of the opium. This discovery resulted in a violent disagreement

---

[1] "§ 174. * * * If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." (21 U.S.C.A. § 174)

between them and Fred, while Margaret was absent from the house, gathered up most of her clothing, took it with him and went to the home of his mother to reside. Before leaving Fred locked up the house and retained possession of the key.

On or about September 8th Margaret had discovered in the garage adjacent to the house in which she and Fred were residing, eight cans wrapped in newspapers which were in a box and covered with leaves. Shortly after Fred left Margaret took the cans from the garage and buried them in the yard. Upon discovery by Margaret that her clothes were missing, she got in communication with Fred over the telephone and demanded that he return them. Fred informed Margaret that he would leave her clothes with his brother, appellant Bernard Stein, and that she was to meet Bernard and tell him where "the stuff [opium] is, or show him, and when he gets that, then he will give you your clothes". Later Margaret was informed by Bernard Stein that she would not get her clothes until he could return the "stuff" to the people to whom it belonged. Margaret, after the disagreement with Fred, went to the home of a long time friend to reside. This friend had formerly held the position of a deputy sheriff and of a police officer. Some four days after leaving the Fred Stein house, Margaret contacted federal narcotic agent Koehn and informed him of the opium cache. Agent Koehn visited Margaret at her then residence and listened in on a telephone conversation between Margaret and one John Fisher, a mutual friend of Margaret and the Stein Brothers, Fred and Bernard. This, and other telephone conversations between Margaret and Fisher and Bernard, resulted in the arrangement for a meeting of Margaret and Fisher and Bernard at the home formerly occupied by Margaret and Fred. On the appointed evening Margaret went to the Dixie Canyon home accompanied by agent Koehn and his wife. One Davis, also a federal narcotic agent, went out there also at the request of agent Koehn. Margaret disclosed to agent Davis the three locations at which the eight cans of opium had been cached by her. Agent Davis secreted himself at a point which permitted him to view the locations of the cached opium. Margaret returned to the car occupied by agent Koehn and wife. Later, Bernard Stein and John Fisher appeared on the scene. They were introduced to agent Koehn and wife by Margaret as her friends. Margaret and Bernard went to the locations of the opium cache. Fisher remained at the car conversing with agent Koehn. The opium tins were taken by Bernard Stein from the location disclosed to him by Margaret. As Bernard Stein emerged from the rear portion of the property carrying the tins he dropped them. In response to an inquiry addressed to him by Margaret as to the reason he replied that he declined to carry the tins to his car in front of strange people. Some discussion ensued between Bernard and Fisher. Fisher informed Bernard that if he was afraid to carry them he, Fisher, was not and would do so, whereupon Bernard picked up three tins and Fisher two tins and started toward their car. In the meantime Davis had joined agent Koehn in the latter's car and at this juncture arrested Bernard and Fisher with the tins of opium in their possession.

The day following the arrest of Bernard and Fisher Margaret and agents Koehn and Davis went to the Dixie Canyon home. The house was locked. Margaret had no key and she gained entrance by breaking a window and admitted the federal agents. A search of the house was made. Margaret discovered a small bottle containing yen shee in the cupboard where she kept condiments of different kinds. She surrendered the bottle containing the yen shee to the agents.

The tins of opium and the bottle containing the yen shee were introduced in evidence at the trial.

■ At the trial of this case appellants relied heavily on the defense of entrapment and upon this appeal reiterate with equal fervor that the facts hereinbefore set out establish that they were entrapped and cite in support of such contention the case of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249, which holds that where a government agent insti-

gates and induces the commission of a criminal act by a person otherwise innocent of any criminal intent and without previous disposition to commit the criminal act, the defense of entrapment is available. However, as appears here, where the government agents merely employ stratagem for the purpose of apprehending persons already engaged in criminal activities no case of entrapment is made out. See also, Louie Hung v. United States, 9 Cir., 111 F.2d 325. In the instant case the possession of opium and the formation of the intent and purpose to violate the law existed before the government agents became aware of the situation. The arrangements made between the government agents were designed only to apprehend appellants in the furtherance of their criminal enterprise. The arrangement for Bernard Stein and John Fisher to pick up the "stuff" and the inducement therefor originated solely with Margaret, a private citizen.

■ Answering appellants' second assignment of error that the evidence is insufficient to justify the verdict, we need do no more than point to the factual situation hereinbefore set out.

■■ Appellants assign as error the admission of the testimony of Margaret as to her observation of Fred Stein's use of the black substance to which we have referred in the statement of facts. It is urged such testimony disclosed the commission of a separate and distinct crime but appellants' argument fails to take into consideration the exceptions which permit the introduction of such evidence when its purpose is to show a system, guilty knowledge, etc. What more convincing evidence could there be that Fred Stein knew of the existence of the opium cached in his garage than the fact that he was admittedly a user of a similar substance taken from tins of the same kind and character and which becomes more readily admissible when considered in connection with the eagerness of Fred Stein to barter with Margaret for the return of the tins she took from the garage. It would seem clear that an opium addict could reasonably be charged with knowledge of the contents of the tins he was endeavoring to regain possession of, especially when shown to have used similar stuff out of similar tins. Guilty knowledge was an essential element of the crime charged and the challenged evidence was competent to establish it.

■ The bottle of yen shee discovered by Margaret while she and the government agents were searching the Dixie Canyon house was introduced into evidence over appellant Fred Stein's objection. (Bernard Stein and John Fisher were represented by other counsel). Counsel for Bernard Stein and John Fisher made no objection to the introduction of this evidence and not until the evidence in the case had been submitted did they join counsel for Fred Stein in moving to strike the evidence relative to the yen shee and in a motion for a directed verdict on the ground that the evidence was improperly admitted. The motion for the directed verdict obviously was without merit and the motion to strike came very late indeed. In this connection we also call attention to the fact that counsel for Bernard Stein and John Fisher made no motion to have the yen shee evidence limited to appellant Fred Stein. Had this been done the record sustains the assumption that the trial court would have promptly done so. The trial court seems to have been very careful in this regard, having time after time interrupted the proceedings to impress upon the jury the fact that evidence then being adduced was not to be considered in connection with Bernard Stein and John Fisher. Counsel for Fred Stein at the trial represented Fred and Bernard Stein in this court. At the oral argument he was of the opinion that a stipulation was entered into in the trial court that all objections or motions made on behalf of Fred Stein were to be considered as having been made on behalf of Bernard Stein and John Fisher. A careful search of the records fails to disclose any such stipulation.

■ As to the evidence of yen shee, as we have stated, objection to its introduction was made by Fred Stein on the ground that it was incompetent, irrelevant and immaterial, bearing no relation to the crime charged in the indictment and on the further ground that it was obtained by an illegal search and seizure in violation of rights ac-

corded by the Fourth and Fifth Amendments. No motion to suppress the evidence was made at any time. However, the trial court passed on the merits of the objection and we are therefore required to do so. United States v. Di Re, 2 Cir., 159 F.2d 818. As to the relevancy and competency of the evidence, here again we have the question of guilty knowledge and a course of conduct which tends to connect Fred Stein with the possession of the opium, yen shee, found in the house which he, an admitted addict, had occupied. The weight to be accorded the evidence was for the jury. As to the alleged unlawful seizure, the bottle of yen shee was taken from the house under the joint ownership and control of Fred Stein and Margaret. The right of Margaret to enter the house cannot be seriously questioned; in fact, counsel for Fred Stein admitted at the trial that Fred and Margaret had the same right of possession and occupancy. Then the question is, could Margaret, having lawfully entered her home, by extending an invitation to the federal agents to enter thus make their entry lawful? We think she could and that she did.[2] There is not the slightest intimation of any coercion being used in this case. Margaret freely and voluntarily extended the invitation to enter and these facts distinguish the instant case from the case of Amos v. United States, 255 U.S. 313, 314, 41 S.Ct. 266, 65 L.Ed. 654. The original entry and search being authorized evidence discovered during the search was properly seized and its admission into evidence was proper. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098.

■ Relative to the seizure of the tins of opium by the federal agents, the arrest of appellants and the subsequent introduction into evidence of the seized opium, appellants argue that in arresting appellants the agents acted without probable cause, in that the agents relied solely upon information of Margaret as to the nature of the contents of the tins, that the tins were not opened by the agents prior to the arrest and said tins being wrapped in newspaper it was impossible for the agents to determine the nature of the contents. This argument is concerned with the admissibility of the opium in evidence in that it was not seized pursuant to a lawful arrest. The issue as argued here was not raised at the trial. No motion to suppress was made and, furthermore, appellants made no objection to the introduction of the opium into evidence. It is too late to raise the question for the first time on appeal. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. ——.

■ The unconstitutionality of the Jones-Miller Act, 21 U.S.C.A. § 171 et seq., is argued. This question was set at rest in the case of Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; see also, Gonzalez v. United States, 9 Cir., 162 F.2d 870.

■ It is claimed the Court erred in the giving of certain instructions and the refusal to give certain instructions requested by appellants. Some of the objections appear to be extremely technical and other objections are directed to a particular instruction isolated from the charge as given by the Court. We think the proper approach is to view the charge as a whole to determine whether or not the jury was properly and adequately instructed as to the law governing the case. We have followed that procedure here and careful consideration of the entire charge convinces us that the instructions given constituted a full, complete and adequate presentation of the law of the case to the jury.

Judgment affirmed.

---

[2] Raine v. United States, 9 Cir., 299 F. 407, certiorari denied 266 U.S. 611, 45 S.Ct. 94, 69 L.Ed. 467; United States v. Sergio, D.C., 21 F.Supp. 553.