131 So.2d 56

STATE of Louisiana

v.

Wilbert AUGUSTINE.

No. 45410.

April 24, 1961.

Rehearing Denied June 29, 1961.

James I. McCain, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., Michael E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., J. David McNeill, Exec. Asst. Dist. Atty., Walter E. Doane, Asst. Dist. Atty., New Orleans, for appellee.

SUMMERS, Justice.

The defendant, Wilbert Augustine, was convicted of the crime of aggravated rape and sentenced to death in the electric chair. From this conviction and sentence defendant appealed.

Defendant was indicted for aggravated rape by the Grand Jury of Orleans Parish on August 26, 1959. On September 24, 1959, he entered a plea of not guilty. On November 10, 1959, application was made on behalf of the defendant for the appointment of experts in mental diseases, according to law, to examine defendant with regard to his present mental condition and his mental condition as of the time of the commission of the alleged offense. A hearing on this application was accordingly held on November 13 and 16, 1959, at which time defendant filed a plea of insanity. As a result of the hearing the Court issued an order appointing two physicians, the coroner and a psychiatrist, qualified experts in mental diseases, to examine into the present mental condition of the defendant and into his mental condition as of the date of the commission of the alleged crime

Thereafter, on January 7, 1960, a hearing was held to determine the present sanity of the defendant. On that date a report dated December 15, 1959, was filed by the physicians which read that the defendant "is at the present time able to appreciate the usual, natural and probable consequences of his acts; that he is able to distinguish right from wrong; that he is able to assist his counselor; and that he is at present time sane." Defendant proceeded to trial on the hearing involving his present sanity without offering any objection to the introduction of the report of the lunacy commission, which was also read into the record by both of the physicians without objection by defendant. However, an effort was made, while the physicians were under cross-examination, to discredit their report by showing they had not made adequate investigation or kept the defendant under proper observation. At the conclusion of the hearing, the trial judge found the defendant "is at present sane; that he understands the proceedings pending against him in this court; and that he is able to consult with his attorney and assist him in preparing and making his defense." To this ruling, counsel for the accused reserved Bill of Exceptions No. 1 assigning as principal error therefor that the examination of the coroner and physician appointed by the Court was cursory and inadequate, and completed and delivered in violation of the standard fixed by law.

At the hearing which was held on January 7, 1960, to determine the present sanity of the defendant, it was established by the testimony of the physicians appointed by the Court that they each saw him on two occasions while he was incarcerated in the parish jail, once prior to December 15, and once after that date. It was also shown that at these examinations one of the physicians reviewed his record and talked to the deputy on defendant's tier about his behavior. The conversation this physician had with defendant involved the defendant's present behavior, his social background, educational background, and his medical history with a view, too, of observing his ability to answer the questions readily, intelligently and correctly, observing his demeanor and judging his behavior at the time. The trial judge questioned the physicians with respect to the lay testimony which had been heard which tended to show that the accused had epileptic fits and asked them if the fact that defendant had previously suffered from epileptic fits would indicate any mental derangement. In answer thereto, the physicians testified that there was no evidence of any mental derangement at the time of the examination and the fact that the defendant had epileptic fits would not affect their opinion as to his present sanity. Article 269 of the Code of Criminal Procedure, LSA–

R.S. 15:269, enumerates the following standards to be observed by the physicians appointed, viz.: "* * * The accused shall be kept under observation by the physicians and they shall proceed with an investigation into the sanity of the accused and they shall have free access to the accused at all reasonable times and shall have full power and authority to summon witnesses and to enforce their attendance. They shall within thirty days make their reports in writing to the presiding judge. Their findings shall constitute the report of the examination and the report shall be accessible to the district attorney and to the attorney for the accused. * * *"

With respect to the sufficiency of these examinations and the objection made by learned counsel for defendant on the basis of his contention that they were cursory and inadequate, we feel the reasoning of the Court in State v. Faciane, 233 La. 1028, 1048, 99 So.2d 333, 340, is particularly pertinent. There Chief Justice Fournet, as organ of the Court, said:

"There is nothing in the statute (Code of Criminal Procedure, Article 269, LSA–R.S. 15:269) requiring that an accused be kept under constant observation for any fixed period of time, and the legislature has not therein attempted to dictate to these experts the manner and method to be employed by them in conducting their examination, undoubtedly feeling, as do we, that they are eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant." (Brackets ours.)

There is no question concerning the qualifications of the physicians appointed in the case at bar. One was the coroner and the other was shown to have qualifications in excess of those required by Article 269 of the Code of Criminal Procedure, LSA–R.S. 15:269.

The question of the present sanity of the accused is to be determined solely by the trial judge, subject to review by this Court. See State v. Jenkins, 236 La. 256, 262, 107 So.2d 632, 634, certiorari denied 79 S.Ct. 1135, 359 U.S. 998, 3 L.Ed. 2d 986, and authorities cited therein. In State v. Jenkins, supra, the recognized test of present insanity was quoted to be:

"* * * to warrant the sustaining of a plea of present insanity, thereby preventing trial of a criminal action, it must appear by a preponderance of evidence that the accused is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a rational manner."

To the same effect Article 267 of the Code of Criminal Procedure, LSA–R.S. 15:267, provides:

"If before or during the trial the court has reasonable ground to believe that the defendant against whom an indictment has been found or information filed is insane or mentally defective to the extent that the defendant is *unable to understand the proceedings against him or to assist in his defense,* the court shall * * *.

"If the court, after the hearing, decides that the defendant is able to *understand the proceedings and to assist in his defense,* it shall proceed with the trial." (Italics ours)

The law presumes every man is sane. State v. Seminary, 165 La. 67, 115 So. 370; State v. Toon, 172 La. 631, 135 So. 7; State v. Riviere, 225 La. 114, 72 So.2d 316.

We cannot say that the testimony adduced at the hearing to determine whether there was sufficient evidence to inquire into the defendant's present sanity and the evidence at the hearing to determine his present sanity were sufficient to enable defendant to meet these quoted tests, rebut the presumption of his sanity and thereby establish his present insanity. There is no manifest error in the findings of the trial judge, and it is therefore necessary to conclude that Bill of Exceptions No. 1 is without merit.

After the hearing on present sanity, the case proceeded to trial on January 21, 1960.

Bill of Exceptions No. 2 pertains to the opening statement of the Assistant District Attorney.

During his opening statement to the jury the Assistant District Attorney enumerated the various acts of the defendant in committing the crime charged and stated:

"The State, gentlemen, will offer the oral confession made by the defendant to the following members of the New Orleans Police Department: Detective J. Tardo, Patrolman J. Kalister, and B. Alexander."

Later in the opening statement the Assistant District Attorney stated further that:

"* * * the State will introduce into evidence the following: * * * the oral confession of the Defendant made to members of the New Orleans Police Department."

During the course of the trial, the State's attorney, out of the presence of the jury, sought to lay a predicate for the admission of the oral confession of the accused. Benjamin H. Alexander, an officer of the law, testified that he took a voluntary oral statement from the accused about the crime charged on the morning of August 18, 1959, in Charity Hospital; that prior thereto the accused had undergone an operation and a pellet had been removed from his bladder, and he took his statement on the morning of the 18th of August 1959, after

midnight but before dawn while Augustine was lying in bed bandaged about his body and bleeding from his side through bandages. Alexander testified that Detective J. Tardo and Patrolman J. Kalister were with him when he obtained the statement. Tardo testified he was not present and Kalister was not available as a witness, being out of the State at the time of the trial.

On traverse of the foundation for admission of the oral confession, defendant produced Dr. William L. Chapman, who testified that on the date of the alleged confession, August 18, 1959, the accused was under the influence of Demerol to relieve pain and had been under narcotics since the early morning of August 15. The Trial Court then ruled that the oral confession was not admissible.

■ Counsel for the defendant moved for a mistrial on the grounds that the Assistant District Attorney had twice declared in his opening statement to the jury that he was going to introduce the oral confession of Augustine given to designated police officers and since such was not admissible prejudicial error had resulted. The Court refused to grant a mistrial and defendant reserved his Bill of Exceptions No. 2 to this ruling.

The alleged confession referred to by the Assistant District Attorney in his opening statement, if it was in fact a confession,

has not been admitted in evidence, and we are unable to ascertain whether it was a confession. The question which we have before us was concisely answered in State v. Johnson, 226 La. 30, 44, 74 So.2d 402, 407, as follows:

"* * * But, if we assume again that the statement was in the nature of a confession, the mere fact that the district attorney mentioned it in his opening statement and did not offer it in evidence does not supply a sound predicate for concluding that appellant sustained injury thereby. Albeit, we know of no rule of law which requires that the State offer all evidence referred to by the prosecutor in his opening statement or any jurisprudence holding that the accused necessarily suffers prejudice if he does not. Quite the contrary, it would be more logical and reasonable to conclude that the failure or inability of the State to elicit any evidence outlined in the opening statement redounds to the advantage and benefit of the accused."

In the foregoing case, the foundation for the introduction of the alleged statement was made in the presence of the jury. Furthermore, we are persuaded that the strength of the reasons quoted above is fortified by the facts in the case at bar, for the jury was withdrawn at all times during the attempted laying of the predicate and at the time of the traverse, the

effect of which was to deny to the jury the testimony of the witness who stated that he had obtained the confession from the accused. Moreover, under Article 333 of the Code of Criminal Procedure, LSA–R. S. 15:333, the district attorney is required to make an opening statement " * * * explaining the nature of the charge and the evidence by which he expects to establish the same; * * * " and it is well recognized that courts cannot admit the confession of the defendant if it is not mentioned in the State's opening statement. State v. Silsby, 176 La. 727, 146 So. 684. Thus, it is apparent that a dilemma would be created for the district attorney if we were to adopt the view defendant urges upon us here—he would be faced with reversible error for mentioning a confession in his opening statement, if that confession were later found to be inadmissible, when we are certain, too, that he must mention the confession in his opening statement or else he cannot attempt to prove it. Such a rule would impose upon the district attorney the duty to determine before trial the validity of every confession sought to be admitted into evidence, for he dare not present it unless he be convinced of its validity. Such a rule unjustly requires that he contemplate and know about any conceivable proof in rebuttal to the confession which the defendant might possibly present. It would require him to seek out evidence for the defense as well as the evidence to support the State's position, weigh it and decide before his opening statement as to the validity of the confession. So long as he acts in good faith we do not feel that he should be subject to this dilemma. We have noted that the testimony of the officer, Benjamin H. Alexander, who obtained the oral statement, was to the effect that when he obtained the alleged confession the accused was rational, spoke clearly, conversed with them, did not appear to be under sedation, he had permission to speak to him, and he gave the statement freely and voluntarily. It was not until defendant offered the testimony of Dr. William L. Chapman which disclosed that defendant was under the influence of Demerol that doubt as to the admissibility of the alleged confession became apparent. It is to be observed that there is no contention here that the Assistant District Attorney was in bad faith in making his opening statement. Nevertheless, under these circumstances, it cannot be said that the Assistant District Attorney was in bad faith in making mention of the confession in his opening statement, even if it be assumed that its mention could prejudice the jury (which we doubt) when the confession is not subsequently introduced in evidence. His inference from the facts available to him that the confession would be admissible was a reasonable one under the circumstances. State v. McKee, 170 La. 630, 128 So. 658.

There is an additional circumstance which we feel has occurred to preserve the rights of the accused against prejudice, which might conceivably have resulted from the mention of the confession by the prosecuting attorney in his opening statement, and which circumstance, in addition to those we have already mentioned, makes the defendant's contention with respect to this Bill of Exceptions clearly without substance, and that is that the trial judge instructed the jury, " * * * you are not to consider the opening statement as proving anything at all in the case. You are to consider only the testimony of sworn witnesses who have appeared before you on the witness stand.

"In other words, should either the district attorney or the counsel for the defendant make statements in an opening statement and fail to substantiate these statements so made by either of them by the testimony of sworn witnesses on the witness stand, then you are to give no attention whatsoever to the statements made by them, and, on the contrary, you should disregard (the statements) the same as if never having been uttered." (Brackets ours) In our view, the jury observed these instructions issued by the trial judge as they were bound to do. Code of Criminal Procedure, Article 385, LSA–R.S. 15:385. See, also, State v. Sharbino, 194 La. 709, 194 So. 756; State v. Hutton, 198 La. 174, 3 So.2d 549; State v. Fletcher, 210 La. 409, 27 So.

2d 179; State v. Smith, 212 La. 863, 33 So.2d 664; State v. Crittenden, 218 La. 333, 49 So.2d 418. Bill of Exceptions No. 2 is not well founded.

The next Bills of Exceptions raised by defendant are grounded on the fact that during the trial defendant offered evidence setting forth the epileptic history of the accused. In rebuttal thereto, the prosecuting attorney offered the testimony of Doctors Chetta and Sanchez, who were the coroner and psychiatrist, respectively, and the same physicians appointed by the Court to examine into the mental condition of the accused with respect to his present sanity and sanity at the time of the commission of the offense. As previously noted, the physicians had not reported with respect to insanity at the time of the offense. After the doctors were questioned concerning their competency or qualifications as experts by the prosecuting attorney, they were tendered for cross-examination with respect to their qualifications only. Thereupon counsel for defendant sought to question them as to the extent of their examination of the accused and whether they had the accused sufficiently under observation to make a report as required by law. In other words, defense counsel was seeking to examine the experts on their knowledge of the particular facts concerning the defendant upon which their opinion was to be based. The prosecuting attorney objected to this line of cross-

examination as being beyond the scope of the direct examination and, further, that the experts had been tendered for examination as to their qualification only. The Court refused to permit counsel to cross-examine the physicians beyond the scope of the direct examination touching upon their competency or qualifications as experts until such time as the prosecution had completed its examination in chief. Defense counsel reserved Bills of Exceptions No. 3 and 4 to these rulings.

"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court." Code of Criminal Procedure, Article 466, LSA-R.S. 15:466.

██ This Court has had occasion to announce the rule that when a witness has been tendered by the State for cross-examination for a particular purpose, the defendant has no right to cross-examine the witness generally until the State has finished its examination in chief. State v. McCall, 162 La. 471, 110 So. 723, and State v. Glauson, 165 La. 270, 115 So. 484.

The law of our state is written to the effect:

"In the discipline of his court the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." Code of Criminal Procedure, Article 369, LSA-R.S. 15:369.

██ In the light of the foregoing, it readily appears that the competency of an expert and his qualifications to give his opinion are not dependent upon his knowledge of the particular facts upon which he bases his opinion. His knowledge of the particular facts upon which his opinion is based bears upon the weight to be accorded to the opinion which he has reached, and does not affect his competency, strictly speaking, as an expert.

██ Accordingly, the trial judge has not erred in his ruling and these bills are considered unfounded.

Bills of Exceptions Nos. 5 and 6 are directed at the failure of the physicians to make a report prior to trial on sanity at the time of the offense. Counsel for defendant contends that when the physicians were called to testify in rebuttal, and when they testified that the defendant was sane at the time of the commission of the offense on the second day of the trial, they were making the report which had been ordered made within thirty days after November 16, 1960; that, accordingly, the report not having been made timely in advance of

trial, counsel for defendant moved for a mistrial which was refused by the Court. To the ruling counsel reserved these Bills of Exceptions.

The question involves an interpretation of Article 269 of the Code of Criminal Procedure, LSA–R.S. 15:269, the pertinent portions of which provide:

> "* * * They (the physicians appointed by the Court) shall within thirty days make their reports in writing to the presiding judge. Their findings shall constitute the report of the examination and the report shall be accessible to the district attorney and to the attorney for the accused. * * *" (Brackets ours)

Counsel for defendant has seriously urged for our consideration the holding of this Court in State v. Winfield, 222 La. 157, 62 So.2d 258 and State v. Sauls, 224 La. 1063, 71 So.2d 568, which held that the quoted provisions of the statute are mandatory and the report must be furnished prior to trial.

In the Winfield case the facts involved a hearing on present insanity at which no evidence was introduced whatsoever, the trial judge in ruling that the accused was presently sane having based his finding on information received by him from the psychiatrist in a telephone conversation. Immediately upon his issuing the order finding the accused presently sane, the defendant reserved a bill of exceptions to the ruling. There was nothing which would serve as grounds for an objection prior thereto. This Court found the trial court was in error in finding the accused presently sane without having required the filing of the report of the physicians prior to trial.

In the Sauls case, the report on sanity at the time of the offense was not available to the accused before trial and his counsel moved for a continuance until the report was made available to him. The continuance was denied and a bill of exceptions was reserved to the failure of the Court to grant a continuance until the report could be furnished, which this Court found to be well taken.

In the case at bar, however, the defendant proceeded to trial without availing himself of the right, which he had, to demand the production and filing of the report of the physicians prior to trial. Although the provisions of LSA–R.S. 15:269 requiring the filing of the report within thirty days and the jurisprudence requiring that it be available to counsel prior to trial are mandatory if insisted upon by the party having a right to make that demand, it does not follow that such a right cannot be waived or renounced. When defendant permitted the trial to proceed without requiring the report prior thereto, or without asking for a continuance until it could be furnished, he acquiesced in the proceedings and could not object subsequently, at a later

stage of the trial, if the physicians appointed by the Court testified in rebuttal to facts which defendant had himself sought to prove. Just as defendant by denominating the testimony of the physicians as the "report" thereby waives the requirement that it be in writing, which he may do, likewise he has waived the right to the report being made prior to trial by proceeding to trial without it. The right to demand a report of physicians on the mental condition of the accused at the time of the offense and to have it filed before trial, we conclude, is a procedural matter which can be waived.

In State v. Shearer, 174 La. 142, 140 So. 4, 6, where a madatory right was involved, the Court in holding that it could be waived said:

"If an accused person may waive his right to have a copy of the indictment and the list of jurors served upon him, or waive arraignment and trial by jury in certain cases, and he can under repeated rulings of this court, he may likewise waive his right to have the prosecuting officer make an opening statement as provided by article 333 of the Code of Criminal Procedure. Under the settled jurisprudence of this state, the going to trial by a defendant without insisting that such formalities be complied with is considered a waiver of the right conferred. Our holding, therefore, is that these accused, having gone to trial without objection, waived their right to have the statement made."

See, also, State v. Jacobs, 195 La. 281, 196 So. 347; State v. James, 196 La. 459, 199 So. 391; State v. Rachal, 212 La. 731, 33 So.2d 501; State v. Blankenship, 231 La. 993, 93 So.2d 533. Defendant's claim of error is a technical one, State v. Faciane, supra, and cannot avail to deny the ends of justice. It is to be noted that the defendant was aware on January 7, 1960, of the fact that the written report of the physicians appointed by the Court did not contain a report on sanity at the time of the offense, and there was ample time to require its production prior to the commencement of the trial on January 21, 1960.

In view of the fact that the question of insanity at the time of the offense is a question for the jury which they heard and determined and in view of defendant's failure to demand a continuance prior to trial until the report of the physicians was furnished, we cannot conclude that a miscarriage of justice or error prejudicial to the substantial rights of the accused resulted in this case. Code of Criminal Procedure, Article 557, LSA–R.S. 15:557.

Bill of Exceptions No. 7 was reserved to the refusal of the Trial Court to grant a motion for a new trial. This bill reasserts the contentions in Bills Nos. 1 through 6 and the motion for a new trial was properly denied.

The conviction and sentence are affirmed.