HAWTHORNE, Justice.
 

 Edward Davis, charged with the crime of murder, was convicted and sentenced to death. From this conviction and sentence he has appealed to this court, relying for reversal on several bills of exception.
 

 On motion of counsel for defendant the court appointed a lunacy commission pursuant to Articles 267 et seq. of the Code of Criminal Procedure. At a hearing held before the judge to determine the accused’s present sanity his counsel moved for sequestration of the witnesses under Article 371 of the Code of Criminal Procedure. When this motion was denied, counsel excepted and reserved a bill of exception.
 

 At this hearing the only persons to testify were members of the lunacy commission who had been appointed by the court as experts to determine the defendant’s mental condition. In his per curiam the trial judge says :
 

 “There was nothing to show any collusion between these expert witnesses and the State, or even among themselves; the proceeding was before the Judge alone on the question of present sanity, and no useful purpose could have been served by sequestration of the witnesses in this instance.”
 

 Article 371 of the Code of Criminal Procedure makes it discretionary with the trial judge whether he will order the sequestration of witnesses in a criminal case; and under the jurisprudence of this court it is now well settled, as stated in State v. Ferguson (on rehearing), 240 La. 593, 124 So.2d 558, 567, that “It is only when the exercise of the discretion is shown to be arbitrary or unreasonable and the accused has been thereby prejudiced in obtaining a fair and impartial trial that this Court is warranted in setting aside a verdict”.
 

 
 *979
 
 In the instant case there is no showing made which would justify us in assuming, much less in concluding, that the defendant here was prejudiced by the refusal of the trial judge to sequester these expert witnesses, who were to testify as to the result of their examinations of the accused and their conclusions as to his sanity based on their examinations.
 

 There are many cases in the jurisprudence holding that the trial judge did not abuse his discretion to the prejudice of the accused in refusing to sequester certain witnesses — for instance, officers of the court, peace officers, coroners, and medical and investigating officers.
 
 [1]
 
 However, since State v. Ferguson, supra, as the majority of this court now views the matter, it appears that regardless of the type of witnesses it is only when the trial judge’s exercise of his discretion is shown to be arbitrary and unreasonable to the prejudice of the accused that the accused is entitled to a reversal.
 

 Counsel for defendant say that the refusal of the trial judge to sequester these expert witnesses deprived him of the right to effectively cross-examine them, or that his cross-examination of these witnesses was definitely impaired,' and that he was prejudiced thereby. In support of this argument they cite State v. Carter, 206 La. 181, 19 So.2d 41.
 

 In the Ferguson case, supra, on rehearing it was pointed out by the majority of this court that the holding of the Carter case was confined to the facts of that particular case; and this holding in the Ferguson case, in effect, means that the Carter case can no longer be cited in support of a contention like defendant’s in the instant case. The reason given by the court as a basis for finding that the trial judge had abused his discretion in the Carter case stands alone in the jurisprudence, and accordingly we conclude, as stated above, that this bill is without merit because the defendant has failed to show that the judge abused his discretion or acted arbitrarily or unreasonably to his prejudice.
 

 Several bills of exception reserved during the progress of the trial have been grouped together because all were taken to the admission of certain evidence over the objection of counsel for the defendant that the evidence had not been adequately covered by the district attorney in his opening statement.
 

 For a proper understanding of these bills it is necessary for us to state only that the accused was taken into custody at his home about 5:45 a. m.; that later in the day, around 9:00 a. m., he was taken to the scene of the homicide by the officers, and then and there reenacted the crime charg
 
 *981
 
 ed, demonstrating to those present how and where he had killed the deceased; that subsequently he was taken to the district attorney’s office, where a tape recording was made of a statement that he gave at that time, which was later reduced to writing and signed by the accused.
 

 It is defendant’s contention that “The state did not indicate or suggest
 
 what
 
 statements or actions, [which] it intended to or would attribute to the accused, would be established by admissions, statements or confessions of the accused — or
 
 when or where
 
 the same were made”; that the district attorney in his opening statement did not suggest or indicate that the State would attempt to establish that the accused had made inculpatory statements or confessions at the scene of the crime.
 

 The opening statement of the district attorney, made pursuant to Article 333 of the Code of Criminal-Procedure, was attached to and made part of these bills. In this statement the district attorney, after explaining the nature of the charge and setting out facts that the State expected to prove, stated:
 

 “The State will also show the day following the shooting Edward Davis [the accused] was taken back to his home at 314 Ross Avenue by the Chief of Police, Officer Black Herpin, Officer Dudley Hoffpauir and the Assistant District Attorney, whereupon he re-enacted the shooting, demonstrated to those present how and where he had shot and killed Ezra FormanLater he identified the gun.
 

 “The State expects to prove all of the above by the verbal testimony of witnesses produced in open Court and under oath, by physical evidence, by the res gestae, by admissions, statements and confessions of the accused himself and by direct and circumstantial evidence.”
 

 Under Article 333 of the Code it is the mandatory duty of the district attorney to make an opening statement in cases triable before a jury. Under many decisions of this court interpreting this article, the district attorney in his opening statement need not give in minute detail all the evidence he intends to produce or the name of each witness he intends to call, and the opening statement is sufficient if the district attorney explains in it the nature of the charge and the nature of the evidence by which he expects to prove it. Where a confession constitutes a part of the evidence by which the State expects to prove the charge against the accused, the district attorney must make mention of this fact in his opening statement, or the confession cannot be relied on, offered in evidence, or referred to in the presentation of the State’s case; but the district attorney is not required either to read the confession to the jury or to detail its substance.. See State v. Eubanks, 240 La. 552, 124 So.
 
 *983
 
 2d 543; State v. Ward, 187 La. 585, 175 So. 69; State v. Smith, 212 La. 863, 33 So.2d 664; State v. Poe, 214 La. 606, 38 So.2d 359; State v. Sanford, 218 La. 38, 48 So.2d 272; State v. Stahl, 236 La. 362, 107 So.2d 670.
 

 Counsel further argue that there is nothing in that portion of the opening statement quoted above to indicate that the accused made inculpatory statements at his home at 314 Ross Avenue, and that the demonstration of an act and the oral recounting of it are separate and distinct things.
 

 There is no merit to any of the contentions of defendant in regard to these bills. The district attorney’s statement that the accused reenacted the homicide at the scene and that the State expected to prove the charge by evidence which would include admissions, statements, and confessions of the accused was sufficient for the admission of the evidence objected to.
 

 The next bill was reserved during the trial in the following circumstances: A member of the lunacy commission was being examined by the court pursuant to the mandatory provisions of Article 268 of the Code of Criminal Procedure. See also State v. Chinn, 229 La. 984, 87 So.2d 315, and State v. Sauls, 226 La. 694, 77 So.2d 8. The court asked the witness what his opinion was of the mental condition of the accused on May 3, 1959, the date of the homicide.
 
 [2]
 
 The witness replied: “He was not legally insane.” Counsel for defendant objected to the answer of the witness and moved the court to instruct him to refrain from testifying to this conclusion on the ground that it was the province of the jury to conclude whether the accused was legally insane.
 

 In his per curiam the trial judge tells us that the witness’ answer had already been heard by the jury before the objection was urged, and that in overruling the objection he immediately instructed the jury that the question of legal insanity was to be determined by the jury alone after hearing the evidence, and that the court would fully charge the jury on the law pertaining to legal insanity at the conclusion of the trial.
 

 We concede that the use of the term “legally insane” was improper in response to the court’s question, for, as stated by counsel for the defendant, it was the province of the jury to determine whether at the time of the commission of the crime the accused was unable to distinguish between right and wrong. Nevertheless the accused was not prejudiced by the witness’ response in view of the instructions given to the jury at that time. It is well settled
 
 *985
 
 in the jurisprudence of this court that the trial of a criminal case cannot be defeated by a witness who makes a statement which he should not make and for which the prosecution is not responsible, especially where the trial judge instructs the jury to disregard the remark. State v. Rugero, 117 La. 1040, 42 So. 495; State v. Goodwin, 189 La. 443, 179 So. 591; State v. Martin, 193 La. 1036, 192 So. 694; State v. Labat, 226 La. 201, 75 So.2d 333; State v. Birdsell, 235 La. 396, 104 So.2d 148.
 

 Counsel in brief also contend that the judge’s instructions to the jury were a comment on the evidence by the court. This contention is not properly before this court as counsel did not object to the instructions and did not reserve and perfect a bill. Even if they had, however, it is our view that there is no merit whatever in this contention.
 

 The next bills to be considered were taken to the admission in evidence of certain statements and confessions of the accused, consisting of a tape recording made in the district attorney’s office, which was subsequently reduced to writing and signed by the accused, and an oral statement made by the accused in connection with his reenactment of the crime at the scene. It is defendant’s contention that these statements were not free and voluntary and that the State had not proved they were made freely and voluntarily and in accordance with law.
 

 In laying the foundation for the admission of these confessions and statements the State called every officer or other person who was present at the time they were made, who testified in detail as to all the facts and circumstances surrounding the giving of these confessions. These witnesses all testified that the statements of the accused were free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
 

 When the predicate for the admission of these confessions was being laid, the accused took the stand and testified that he made these confessions because he was in fear. He stated that while he was in a cell, he heard voices in a radio room near his cell talking about his case, and that he heard people say he should be taken out and hanged; that he was frightened enough to do anything; that he was afraid his life was in danger. He also stated that the chief of police told him he had better cooperate with the district attorney or he could make it hard on him, and that he had been threatened by a policeman when he was taken back to the scene of the crime.
 

 After the accused had so testified, all those who had had custody of the prisoner were recalled to the stand by the State and were reexamined both by the State and by counsel for the defense with respect to the particulars to which the accused had testi
 
 *987
 
 fied, and these officers emphatically denied the facts and circumstances as recounted by the accused. In other words, in the instant case the State, to prove that the confessions were given freely and voluntarily and not under the circumstances set forth by the defendant, followed the procedure which this court approved in State v. Robinson, 215 La. 974, 41 So.2d 848, and State v. Honeycutt, 216 La. 610, 44 So.2d 313 (see State v. Savell, 238 La. 758, 116 So.2d 513), so that the trial judge was afforded an opportunity to weigh the evidence and decide the issue before him.
 

 The trial judge in his per curiam informs us that he was convinced that the accused testified falsely regarding the signing of the written confessions, and that in view of his appearance on the stand the court did not accept any of his testimony as being true. We cannot say that the trial judge erred in this respect, particularly since the State on rebuttal offered the testimony of witnesses who denied the facts and circumstances given by the accused in his testimony.
 

 In the tape recording as well as in the written confession the accused stated that he had been in trouble before, that he had shot his father-in-law and had served a term in prison. Under Article 450 of the Code of Criminal Procedure every confession sought to be used against an accused must be used in its entirety; but the State offered to delete this particular statement from the confessions, and the defense accepted this offer. Thereupon with consent of the court the above portion of the confessions was deleted and never heard by the jury. The omission of this portion of the confessions was beneficial to the accused and could not have prejudiced him in any way.
 

 The record in this case contains two or three other bills not briefed by appellant or argued in this court, and under these circumstances it would be perfectly proper for us to consider them as abandoned. Since this is a capital case, however, we have examined these bills and find no merit in any of them.
 

 For the reasons assigned the conviction and sentence are affirmed.
 

 [1]
 

 . State v. Suire, 142 La. 101, 76 So. 254; State v. Thomas, 161 La. 1010, 109 So. 819; State v. Wilson, 168 La. 903, 123 So. 614; State v. Barton, 207 La. 820, 22 So.2d 183.
 

 [2]
 

 . The bill recites that the question was asked by the district attorney, but the record, made part of the bill, and the judge’s per curiam show that the question was asked by the judge.