211 So.2d 620

**STATE of Louisiana**

v.

**Claude COMEAUX.**

No. 48990.

June 4, 1968.

Rehearing Denied June 28, 1968.

Carmouche & Shelton, Emile A. Carmouche, Thomas Robert Shelton Rayne, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Bertrand DeBlanc, Dist. Atty., Nolan J. Edwards, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

On October 5, 1966 Claude Comeaux was charged by bill of information with aggravated burglary of the dwelling of Mr. and Mrs. David Arceneaux on June 26, 1965. La.R.S. 14:60. He was convicted and sentenced to serve thirty years at hard labor. Six bills of exceptions are relied upon in this appeal for reversal of the conviction and sentence.

Bill of Exceptions No. 2 was reserved when the trial judge denied a motion to quash the bill of information. The motion to quash alleged that the general venire from which the petit jury was drawn was illegally constituted in that the Jury Commission purposely excluded "potential jurors" who were unable to read and write the English language, notwithstanding that the potential jurors may have been capable of understanding and speaking the language and were citizens and qualified electors of the United States and State of Louisiana. The motion further alleged that, in like manner, the Commission selected no women for jury service.

Article 172 of the Code of Criminal Procedure (1928) requires that a petit juror in any of the courts of this State shall be "able to read and write the English language." Article 172.1 provides that "No woman shall be drawn for jury service unless she has previously filed with the clerk of the district court a written declaration of her desire to be subject to jury service." The testimony of a member of the Jury Commission reflects that the Commission makes an effort to exclude persons who are illiterate and that no women had filed a declaration of their desire to serve as jurors for the current term of court and, therefore, none were called.

Appellant contends that the statutes in question and the actions of the Commission pursuant thereto are discriminatory and prejudicial to the accused in violation of Article III, Section 2, Clause 3 and Article IV, Sections 1 and 2, of the Constitution of the United States and the Fifth, Sixth and Fourteenth Amendments in that he is deprived of a jury which represents a fair cross section of the local population.

 The requirement that a person be able to read and write the English language to be qualified for jury service is a reasonable and nondiscriminatory regulation by the state which operates equally against all persons tried by juries; it affords no advantage to the state which it does not offer to the accused. Literacy is a requirement, moreover, which, if not essential to that purpose, is more apt to assure an understanding of the evidence and the law and bring about a fair verdict

for both the accused and the State. We are of the opinion that this qualification is just as essential to the State's obligation to assure a fair trial to the accused as it is to assure a fair trial for the State. No authority has been cited which refutes these propositions, and we have been referred to no decisions which hold that the literacy qualification for jurors violates constitutional rights.

■ Nor can we conclude that the statute exempting women from jury service on the basis of their sex is not based upon a reasonable classification. Women by nature are the center of home and family life. Louisiana, acting in pursuit of the general welfare, may conclude that women may be relieved from the civic duty of jury service. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). See also State v. Reese, 250 La. 151, 194 So.2d 729 (1967).

■ Bill of Exceptions No. 3: Prior to trial, counsel for appellant was advised by the District Attorney that he intended to inform the jury in his opening statement that he would introduce evidence at the trial of certain purported confessions, incriminatory statements or admissions made by the accused as required by Article 333 of the 1928 Code of Criminal Procedure[1] and by decisions of this court. See State v. Davis, 241 La. 974, 132 So.2d 866 (1941); State v. Augustine, 241 La. 761, 131 So.2d 56 (1941). When the case was fixed for trial on December 14, 1966, counsel filed a motion to set aside the fixing and continue the trial to a date subsequent to January 1, 1967.

The motion for continuance is based upon the argument that the Legislature, at its regular session in 1966, enacted a new code of criminal procedure which was to become effective on January 1, 1967, and Article 767 of the new code[2] repealed Article 333 of the 1928 Code. Since the new provision would not permit the State, in its opening statement, to advert in any way to a confession or inculpatory statement made by the defendant, the Legislature had effectively abolished the concept of Article 333 as explained by the jurisprudence. Therefore, it would offend any acceptable concept of basic justice to try the accused at a time so near the effective date of the new code.

---

1. La.Code Crim.Proc. Art. 333 (1928) provides in part:
 "The jury having been impaneled and the indictment read, the trial shall proceed in the following order:
 "The reading of the plea to the jury; *the opening statement of the district attorney explaining the nature of the charge and the evidence by which he* *expects to establish the same; * * * "* (Emphasis added.)

2. La.Code Crim.Proc. Art. 767 (1966) provides:
 "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."

The contention which this bill raises is without merit. If, as counsel contends, the enactment of Article 767 of the new code denounces Article 333 of the old, the denunciation is only effective on January 1, 1967. There was no intimation in the new code that all prosecutions should await its effective date. Hence the new law has no effect on this prosecution. Nor are we prepared to agree that the new enactment is more nearly attuned to concepts of fair play than the old.

. Bill of Exceptions No. 13 was reserved during the empaneling of the jury. When ten jurors had been selected the regular venire was exhausted; whereupon the trial judge ordered the clerk to draw the names of fifteen tales jurors from the tales jury box. The sheriff, having received the names at 12:15 p. m., proceeded forthwith to summon the tales jurors to report. About two o'clock that same afternoon seven of the fifteen talesmen were present in court. At that time defense counsel objected to proceeding with the selection of the jury until all fifteen of the tales jurors had been summoned and were present in court. The objection was overruled and the remaining two jurors were selected from the seven tales jurors present.

The testimony attached to the bill of exceptions shows that the sheriff and his deputies made reasonable efforts to summon all fifteen of the tales jurors. Telephone calls were made, either to the residences or places of business or employment of each tales juror. It was ascertained from these calls, and in some instances from other sources, that the tales jurors were either out of town and unavailable, or that they would not be available for several hours. The per curiam of the trial judge discloses that appellant was deprived of no peremptory challenges by the proceedings.

Article 186 of the Code of Criminal Procedure provides, in pertinent part, that,

"If on the trial of any criminal case, the regular venire is exhausted, or it appears that it will be exhausted, before the selection of the jury therein, the court at its discretion may instruct the clerk to open the tales jury box and draw therefrom such number of tales jurors as in its judgment may be necessary to serve on said case \* \* \*"

There is no statutory requirement, and none in reason, which compels us to conclude that the trial may not proceed unless the total number of tales jurors selected are present in court. It would be impracticable, and in some instances impossible, to comply with such a requirement. It does appear, however, that the court should be satisfied that a reasonable effort was made to summon

all of the tales jurors and that they could not be produced in court for several hours, and to await their response to the summons would unduly retard the progress of the trial. This requirement was met in the instant case. Moreover, there was no showing that the sheriff intentionally selected certain talesmen for appearance in court to the exclusion of others, or otherwise practiced any fraud to the prejudice of the accused. La.Code Crim.P. art. 557 (1928). Under these circumstances, it was not necessary to delay the proceeding. State v. Lebleu, 137 La. 1007, 69 So. 808 (1915).

Bill of Exceptions No. 4 was reserved to the overruling of a motion to suppress as evidence a piece of cloth and pinking shears found by Dr. Ray Herd, State Criminologist, in the dwelling house of appellant. Bill No. 14 was reserved at the trial when the court overruled defendant's objection to the introduction of the cloth and pinking shears into evidence.

The facts which form the background of these bills of exceptions may be briefly stated. On June 26, 1965 Mr. and Mrs. David Arceneaux resided in a rural dwelling west of Scott and north of Highway 90 in Lafayette Parish. About 5:15 that morning the dwelling was burglarized. One of the three actors in the crime, Bobby Elias, was shot and killed instantly by Mr. Arceneaux. Another, Douglas Simmons, was injured as he fled the scene and was apprehended nearby.

The third party to the crime fled the scene. At approximately 10:00 or 10:30 that morning appellant was found concealed in a shallow trench in an isolated section of a cotton field about seven-tenths of a mile from the Arceneaux dwelling.

A burlap bag containing burglary tools was found on the Arceneaux premises. Among other items contained in the bag were white rags used to wrap the burglary tools. The rags had been cut with pinking shears.

The sheriff's officers knew from prior investigations that Comeaux had connections with Douglas Simmons, who had been arrested in connection with other investigations. Comeaux and Simmons had been seen together.

When the sheriff received notice of Comeaux's arrest by his officers, he applied for and received a warrant to search the house where Comeaux lived with his wife and Pat Robinson in Lafayette about seven miles from the scene of the crime. The warrant was issued to search for narcotics, money, a revolver and other items not connected with the Arceneaux burglary. Based upon the warrant, the Comeaux dwelling was searched and drugs and other items, connected with other offenses, were taken by the officers.

This search ended about three o'clock. Later that afternoon Dr. Herd, with Deputy Leonard Broussard and Officer Fruge of the State Police, contacted Mrs. Lillian Comeaux, appellant's wife, and obtained her permission to search the dwelling again. Mrs. Comeaux accompanied the officers to her dwelling and remained there while the search was conducted. At approximately five that afternoon the officers found pinking shears and cloth which were later identified as being the same cloth from which the rags found with the burglary tools were cut.

■ Appellant's contention is that the first search was unconstitutional and that the officers discovered the cloth in that search which induced them to seek and obtain permission for the second search, which yielded the cloth and pinking shears later introduced in evidence to appellant's prejudice. Hence, the cloth and pinking shears seized in the second search were the fruit of the first unlawful search and the evidence could not, therefore, under the exclusionary rule, be used against appellant. This is appellant's contention that the search warrant was merely a ruse to obtain entry into appellant's house to search for objects connected with the Arceneaux burglary. It presents factual issues which the trial judge resolved adversely to appellant. On the basis of the record before us, and the facts recited herein, we cannot say that the finding

is erroneous. There is, we would agree, ample evidence to support the finding.

■ The State's attorney asserts that the cloth and pinking shears were admissible because they were obtained as a result of a lawful arrest. The decision in James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965) makes this position untenable. But we agree with the State's other contention that the search made with the consent of the wife was lawful and the evidence obtained as a result thereof was properly admitted. The question of consent is purely a factual one which the evidence amply supports in this instance. Not only was the consent to enter and search manifested by the wife's verbal acquiescence, but she accompanied the officers to her house and consented to the removal of the objects discovered there. See Roberts v. United States, 332 F.2d 892 (8th Cir. 1964), cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274; Stein v. United States, 166 F.2d 851 (9th Cir. 1948); State v. Gregoire, 249 La. 890, 192 So.2d 114 (1966).

■ The final bill, No. 15, was reserved during the hearing on the motion to suppress. Deputy Sheriff Harson was called as a witness by appellant and, while he was being examined by defense counsel, he was asked when the drugs referred to in the application for the search warrant

were stolen. The State's attorney objected to the question as immaterial and irrelevant, and the objection was sustained. In argument, defense counsel asserted that the question was relevant and material to establish that the representations made in the application for the search warrant were made simply as a ruse and subterfuge to gain access to appellant's home and, furthermore, to show that none of the items mentioned in the search warrant had any connection with the Arceneaux burglary.

We have noted from the record that the items mentioned in the warrant were not related to the Arceneaux burglary, and since this fact was established, no prejudice occurred to appellant by this ruling.

For the reasons assigned, the conviction and sentence are affirmed.

McCALEB, J., dissents from the ruling on Bills Nos. 4 and 14.

BARHAM, J., dissents with written reasons.

BARHAM, Justice (dissenting).

Bills of Exception Nos. 4 and 14 contend that a piece of cloth and a pair of pinking shears were obtained as evidence in contravention of the defendant's privilege against illegal searches and seizures. Bill No. 4 was reserved at the hearing on a motion to suppress the evidence, and Bill No. 14 was taken at the trial of the case when the defendant's objection to the introduction of the evidence was overruled.

Three masked men burglarized the Arceneaux dwelling at about 5:00 a.m. on June 26, 1965. One of the men, Robert "Bobby" Elias, was shot and killed by Mr. Arceneaux as he entered the house. The second man, James Douglas Simmons, injured himself in climbing a fence as he fled, and he was soon apprehended and arrested near the house. Acting upon information that Claude Comeaux, the defendant here, was a friend of Simmons, officers sought to find and arrest him in connection with the burglary, and his residence was placed under surveillance at 7:00 o'clock in the morning, two hours after the burglary. Comeaux was arrested away from home at about 11:00 a.m. A search warrant for the search of his house was obtained at 1:00 o'clock that afternoon, and a search of the premises began immediately.

On the trial of the motion to suppress evidence on November 23, 1966, the State stipulated that it did not rely upon the search warrant as the basis for the admissibility of the "pinking shears and pieces of white cloth" which were seized from the Comeaux residence. Even if the State had not conceded the invalidity of the search warrant, from all the testimony the conclusion is inescapable that the search warrant

was illegal and that any evidence obtained thereunder would be inadmissible. The affidavit upon which the search warrant was issued was false, and the warrant was secured under the pretext of searching for evidence of another and separate crime, so that the officers could make a "fishing expedition" to obtain evidence connecting Comeaux with the Arcenaux burglary.

The officers searched the house from approximately 1:00 o'clock until about 3:00. Mr. Ray Herd, of the Louisiana State Police Crime Laboratory, who was one of those searching the house, observed some white cloth in the drawer of a chest. Mrs. Comeaux was present during the search and was informed that the officers were acting under a search warrant. Mrs. Comeaux was apparently arrested shortly after the officers desisted from the search, and was incarcerated in the parish jail with her husband.

A little later, while the officers were going over evidence obtained at the site of the burglary, they saw that the burglary tools were wrapped in white cloth which had been cut with pinking shears. Herd, knowing of the cloth he had previously observed at Comeaux's home, wanted to return to the house to continue the search and retrieve this evidence. According to his testimony, he went to the jail, called Mrs. Comeaux from the jail, and told her that they intended to continue the search and would like her to accompany them to the house. She agreed to go, stating that she needed a change of clothes. Herd, two other officers, and Mrs. Comeaux returned to the Comeaux residence, where the pinking shears and the cloth were seized.

Three questions may be posed in order to ascertain the status of the seized evidence:

(1) Was it seized in fact under the illegal warrant?

(2) If it was not seized under the search warrant, were consent and a waiver of the privilege against search and seizure obtained?

(3) If consent was obtained, does the taint of the illegal search warrant, under which Herd admits he first observed the evidence, carry over to the seizure made under consent?

I must resolve the answers to all three questions against the State.

The testimony of the officers and the return of the search warrant clearly and conclusively show that the evidence was in fact seized under the invalid warrant. The return on the illegal search warrant includes the pinking shears and the cloth, and the return clearly indicates that they were obtained under this search warrant.

The circumstances of the prior search under guise of warrant in the presence of Mrs. Comeaux, the cessation of the search

for only a brief time, the in-custody approach to Mrs. Comeaux, and the language used by Herd in conversation with her (according to Herd's own testimony) all indicate that the officers did not believe they needed consent, that they did not seek consent, and that they did not in fact receive that free and informed consent necessary for a legal search. I believe the truth to be that Mrs. Comeaux was merely requested to accompany the officers to the dwelling. Even if a stronger expression of purpose and a more pointed request for consent had been used by Herd, it would have been difficult for Mrs. Comeaux, who was then in custody and who had seen the search warrant just a few hours previously, to believe she had any choice in the matter.

The United States Constitution, Fourth Amendment, and the Louisiana Constitution of 1921, Article 1, Section 7, guarantee "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures * * *".

"* * * When the State relies on consent to establish reasonableness of the search, the burden is on it to show by clear and convincing evidence that the consent was given freely and voluntarily. See State v. Penington, 244 La. 650, 651, 153 So.2d 876; State v. Turner, 248 La. 141, 177 So.2d 115; State v. Stokes, 250 La. 277, 195 So.2d 267. * * *" State v. Andrus, 250 La. 765, 199 So.2d 867.

As was said in the Andrus case, the validity of consent is to be determined by the facts and circumstances of the particular case. The rule that evidence is not admissible when obtained from an illegal search and seizure is founded upon the strong constitutional guarantee against intrusion upon the property and into the privacy of persons. Any contravention of this security of persons and property must be within the exceptions provided by the Constitution and statutes. When one objects to evidence as having been obtained in violation of this constitutional privilege, the State must assume the burden of showing affirmatively that the search and seizure were made under one of the exceptions. Consent is one of those exceptions which make permissible a search and seizure otherwise prohibited. The State here has failed to prove that free, voluntary, informed, and intelligent consent was obtained for the search and seizure. Certainly there can be no consent unless the one consenting knows that he can refuse. The reference is not to legal knowledge, but to factual knowledge. It is apparent that Mrs. Comeaux under the circumstances here did not know as a matter of fact that she had a choice.

Finally, although I need not and do not rest my decision upon this determination, I pass upon the third question. It is difficult to believe that our constitutional

guarantee would allow officers, who have searched premises under a fraudulently obtained search warrant and observed evidence or other paraphernalia on the premises, to cure such a defective and tainted search by obtaining consent without at least a full and complete disclosure.

Courts have not only excluded the evidence taken in an illegal search, but have also declined to accept evidence which would not have come to light but for illegal actions of the police. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Justice Holmes in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, said of the doctrine popularly known as "the fruit of the poisonous tree":

> "* * * The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, *but that it shall not be used at all.* * * *" (Emphasis supplied.)

Therefore, even if "consent" had been obtained, the taint of the illegal warrant and search would have made this evidence inadmissible.

For these reasons I respectfully dissent.

BARHAM and McCALEB, JJ., are of the opinion a rehearing should be granted.