248 So.2d 313 (1971)
258 La. 852
STATE of Louisiana
v.
Henry Earl GRAY.
No. 50898.
Supreme Court of Louisiana.
May 4, 1971.
Rehearing Denied June 7, 1971.
*314 Wilson, Veatch & Booth, Robert A. Booth, Jr., Shreveport, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Albert S. Lutz, Jr., Asst. Dist. Atty., for plaintiff-appellee.
HAMLIN, Justice:
The defendant appeals to this Court from his conviction of the offense of attempted murder and his sentence to serve twenty years in the Louisiana State Penitentiary.[1]
By Bill of Information filed December 16, 1969, defendant was charged with the offense of attempted murder alleged to have been committed on December 11, 1969. After the State filed its answer to a Motion for Bill of Particulars, defense counsel on January 27, 1970, filed a Motion for Appointment of a Sanity Commission. On January 30, 1970, the trial court appointed Drs. Stuart DeLee and Andrew J. Mullen as a Sanity Commission to examine the defendant and report his mental capacity according to law. On May 15, 1970, the trial court held a hearing to determine the issue of defendant's present mental capacity; evidence was adduced in part, and the matter was continued for the taking of Dr. Mullen's testimony. On May 25, *315 1970, Dr. Mullen gave his testimony, and the trial court then ruled that the defendant had the mental capacity to proceed to trial. Defendant was arraigned and pleaded "Not Guilty" and "Not Guilty by Reason of Insanity." He was remanded to jail to await trial. Trial commenced on June 8, 1970, and defendant was thereafter found guilty as charged. Sentence was imposed, and a pre-sentence investigation was denied by the trial judge; a Motion for a New Trial was overruled. The matter is now before us on appeal.
Counsel for the defendant submits that the trial court committed two errors during the course of the proceedings, namely, (1) in "accepting the report of the Sanity Commission that the defendant was sane to stand trial," and (2) in "refusing to authorize funds previously authorized by the Indigent Defender Board for use in obtaining expert psychological testing of the defendant's mental capacity." Five Bills of Exceptions reserved by defense counsel are accumulated under the assigned errors.

SPECIFICATION OF ERROR NO. 1

(Bills of Exceptions Nos. 1, 2, 3 and 5)
Bill of Exceptions No. 1 was reserved to the refusal of the trial judge to quash the report of the Sanity Commission appointed by the trial judge to examine the defendant.
Bill of Exceptions No. 2 was reserved to the refusal of the trial court to appoint a second Sanity Commission to inquire into the sanity of the defendant.
Bill of Exceptions No. 3 was reserved to the ruling of the trial judge that the defendant was presently competent to stand trial.
Bill of Exceptions No. 5 was reserved to the trial judge's overruling defense counsel's motion for a pre-sentence investigation and postponement of sentence pending the results of the investigation.
Herein, defense counsel states that it is not his intention to attempt to persuade this Court that the defendant was incompetent at the time of trial. He says that the purpose of his argument is to demonstrate that, all circumstances considered, the appointed Sanity Commission did not make a proper determination of the defendant's mental competence. He argues:
"The defendant has a history of mental aberrations, the documented evidence of which was studied by the Sanity Commission. Thus, having been placed on notice that the defendant had previous mental disorders, the Commission, rather than administer available psychometric tests, merely interviewed the defendant for approximately one hour in his jail cell.
"The trial judge determines present insanity based on his personal observation and the findings of a Sanity Commission, if one has been appointed. He has a wide latitude of discretion in his decision. He should, therefore, have the benefit of a thoroughly professional analysis of the alleged mental incompetent so that he may render an intelligent and fair decision.
"The trial judge in the present case did not necessarily abuse his discretion in making his decision that the defendant was capable of standing trial. He did err, however, in accepting the report of the Sanity Commission, after the basis for that report was proven to be of questionable professional standards.
"The acceptance of the report was a denial of due process of law for failure to provide the defendant with a competent mental examination.
"The report of this particular Sanity Commission should have been quashed and suppressed and another committee appointed before the defendant was tendered for trial." *316 The report of the Sanity Commission, dated April 28, 1970, recites:

"HENRY EARL GRAY

"34-year-old colored male
"We, the undersigned, members of the Sanity Commission appointed to examine Henry Earl Gray, submit the following report.
"He has been examined by us on several occasions in the Parish Jail, both separately and together and, in addition, we have studied reports from other hospitals concerning this man, although they are given under different names, which he later admits were used as aliases.
"When seen by one of the Commission, Dr. Mullen, in February, Henry Earl Gray was very uncooperative and appeared to be malingering. (A copy of this report is enclosed.)
"Henry Earl Gray was interviewed again by both the members of the Commission on Friday, April 24th and he presented a different picture at this time. He was cooperative. He gave us the aliases that he had used in the other hospital and he was fully oriented, fully aware of the charges against him and able to give a very coherent history. He showed no signs of any mental aberration or of any psychotic behavior.
"It is the impression of the members of this Commission, after thoroughly reviewing the other reports, interviewing Henry Earl Gray and discussing this at some detail, that Henry Earl Gray is not mentally ill and that he is legally sane. It is our impression that he is able to cooperate with his attorney and participate in his defense.
"Very sincerely yours,
 "[Sgd] Stuart DeLee, M. D.
 "Stuart DeLee, M. D.
 "[Sgd] Andrew J. Mullen, M. D.
 "Andrew J. Mullen, M. D."
Drs. DeLee and Mullen testified at the Sanity Commission hearing and during trial. They said, as stated in their report, supra, that they had examined defendant's Army and hospital records in arriving at their conclusions. (In our opinion, the Army and hospital records disclose that defendant was of an anti-social nature and received psychiatric examinations on several occasions.)
Dr. DeLee testified at the Sanity Commission hearing that he saw the defendant two or three times, one visit being with Dr. Mullen; that the interviews lasted fifteen or twenty minutes, the final one being for a forty-five minute period. The accused was interviewed alone, not with other persons. Pertinent testimony of Dr. DeLee is as follows:
"Q And you saw him two to three times. During these examinations, did you make any of the known psychiatric tests to determine his present mental stability?
"A Yes, I used the usual method of history and interview. We did not do any psychological tests on him.
"Q Why didn't you?
"A Why not?
"Q Yes?
"A Doctor Mullen and I neither one thought that any psychological tests would be an advantage in this case."
On cross-examination Dr. DeLee testified:
"Q Now, Doctor, did you give this man all of the necessary tests and all of the necessary observations which in your opinion as a doctor were necessary for you to make a decision on this matter?
"A I did.
"Q Now, did you examine all of the different records or documents that *317 defense counsel presented you with in this matter?
"A I did.
"Q Now after examining all of these records that defense counsel presented you with, and making all of the tests that in your opinion you thought were necessary, is it your belief and your opinion as expressed in this written opinion that he is able to cooperate with his attorney and to participate in his defense?
"A It is."
On trial, Dr. DeLee testified:
"A I think under the circumstances that the psychological tests wouldn't have revealed a whole lot.
"Q Why do you think they would not have revealed anything?
"A Well, he was uncooperative until the last interview that Dr. Mullen and I had with him. And where the patient is uncooperative the psychological tests don't reflect the true nature of the disorder.
"* * *
"Q And you don't think that the circumstances of this case indicated the necessity for psychological evaluation by other methods other than the one which you have already said was not proving successful?
"A I don't think that the psychological tests were indicated in this case."
With respect to defendant's condition at the time of the commission of the instant offense, Dr. DeLee testified:
"* * * Now, Doctor, you have expressed your opinion and that is what I have just read as to the man's present insanity, that is, his ability to stand trial here, to know the charges against him, and to assist in his defense. Now we come to the question of what was his condition on the morning of this offense. And the test under the law of which I am sure you are familiar says if the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
"Now, the conduct in question here is attempt to  attack or an attempt to murder a police officer. Now, Doctor, from all of the background that you know of this man, can you form any opinion as to whether or not he was insane within this definition of Article 14, that is, able to distinguish between right and wrong with reference to the conduct in question at the time of this offense? Could you express any opinion on that?
"A Well, let me say this: Of course, I wasn't there. I didn't have a chance to interview him at that time, but it would seem like that he acted like he has done in the past, perhaps, under similar situations. And this was sort of his general behavior pattern. So I would think that he was his usual self at that time.
"Q Well, the question is at that time would he have been able to distinguish between right and wrong with reference to this conduct in question.
"A I think he would have been."
At the Sanity Commission hearing, Dr. Mullen testified that he had examined the defendant on two occasions, the second one being with Dr. DeLee. He confirmed the finding of the report, supra, that the defendant was able to cooperate with his attorney and participate in his defense. He said his conclusion was to that effect.
*318 During trial, Dr. Mullen testified as follows:
"Q Now, Doctor, the report which you all were giving was for the answering of the question of what was the condition of the man in reference to what we call present insanity; that is, his ability to understand the charges against him and to assist in his defense; and your report was to the Court that he met that test. Now, the other test, insofar as law is concerned, is the question of insanity at the time of the commission of the crime. And that is the test as given by Article 14 of our code: * * * Now, it is the ability to distinguish between right and wrong with reference to the conduct in question. And in this offense the conduct in question is his attack with a knife and a gun upon a police officer after he had been placed in arrest and had been placed in the back seat of a patrol car. I believe you have read copies of police reports giving the facts of this incident.
"A Yes, sir.
"Q Now, Doctor, from what you have learned concerning the past history of this man, from what you have learned concerning your personal interviews with him and examinations of him, could you express any opinion as to whether or not on December 11th he was capable of distinguishing between right and wrong with reference to the conduct in question?
"* * *
"A Well, my opinion would be based on the things that you said that he was capable 
"Q (Interrupting) Of distinguishing between right and wrong in regard to the circumstances with reference to the conduct that was in question.
"A Yes, sir, with the qualification, of course, based just on the interviews after this and the record.
"Q That is your opinion based on that?
"A Yes, sir."
Article 644 of the Code of Criminal Procedure provides that: "When a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least one and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. * * *" The Official Revision Comment under Article 644 states, in part, "(b) The type of examination and procedures to be followed will be determined by the sanity commission, subject to such general directions as the court may include in the order for examination."
In State v. Faciane, 233 La. 1028, 99 So.2d 333, 340 (1958), this Court held: "There is nothing in the statute requiring that an accused be kept under constant observation for any fixed period of time, and the legislature has not therein attempted to dictate to these experts the manner and method to be employed by them in conducting their examination, undoubtedly feeling, as do we, that they are eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant. And once the commission's investigation as to the sanity of the accused has been completed, the only duty imposed upon its members by the statute is that `They shall within thirty days make their reports in writing to the presiding judge,' * * *" See, State v. Augustin, 241 La. 761, 131 So.2d 56, 58 (1961); 12 Loyola L.Rev. 28; 22 La.L.Rev. 391.
A reading of the testimony, supra, and the above jurisprudence constrains us to conclude that Drs. DeLee and Mullen *319 examined the defendant thoroughly and employed proper methods in their determination of his mental competence. Both doctors are skilled professional men. Dr. DeLee, a graduate of the Tulane Medical School, has practiced medicine in Louisiana since 1942, except for two years when he practiced medicine with the United States Army. He is Coroner for the Parish of Caddo and frequently evaluates the mental competence of persons referred to him; he has served on many Sanity Commissions. Dr. Mullen, in addition to completing medical school, took a three-year residency in psychiatry and neurology at Baylor University in Houston, Texas. He is certified by the American Board of Psychiatry and Neurology and at the time of this trial had been in private practice of psychiatry for twelve years.
Since the Legislature has not dictated the manner and method to be employed by doctors carrying out an examination such as the instant one, we conclude that under the facts and circumstances surrounding the defendant's life, Drs. DeLee and Mullen committed no error in omitting the test which defense counsel asserts should have been given. Under the law it is presumed that every man is sane; the burden is on the accused to establish by a clear preponderance of the evidence that he is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in conducting his defense in a rational manner. State v. Marks, 252 La. 277, 211 So. 2d 261. Defense counsel has not shown herein that the conclusions of the mental competence of defendant by Drs. DeLee and Mullen would have been different had psychometric tests been administered to him. We find no error in the trial judge's refusal to quash the report of the Sanity Commission and in his refusal to appoint a second Sanity Commission; likewise, we find no reversible error in the trial judge's ruling that the defendant was competent to stand trial.
We find no error in the trial judge's refusal to grant defendant's motion for a pre-sentence investigation and postponement of sentence. The trial judge ruled that the defendant was presently sane, and the jury found that he was sane at the time of the commission of the instant offense; therefore, under the facts and circumstances of the matter, nothing would have been gained by an investigation, and only unnecessary delay would have resulted. We approve the trial judge's reasons for his ruling; they recite:
"I don't think at this stage that anything other than what has already been done would be of any real value to the Court in preparing its sentence. And I think that that evidence has been before the Court. The Court has just recently determined that the man was presently sane. It has taken testimony in the case, admitted testimony by the psychiatrist and by the coroner, all tending to the question of whether or not he is presently sane. All that was brought out in the court, whether he was sane at the time of the crime and whether he was presently sane. Both members of the commission were questioned extensively in court. The Court as well as the jury felt that he was sane. And, consequently, I can see nothing that can be gained by further examination of this defendant."
Specification of Error No. 1 is without merit.

SPECIFICATION OF ERROR NO. 2

(Bill of Exceptions No. 4)
On June 8, 1970, prior to the commencement of trial on the merits and before the empaneling of the jury, Bill of Exceptions No. 4 was reserved to the trial court's refusal to grant defense counsel's motion for the court's approval of an expenditure of funds by the Indigent Defender Board for the payment of the necessary fees to obtain a proper and full evaluation of defendant's *320 sanity, and to obtain expert testimony on behalf of the defendant.
As stated supra, the trial judge ruled on May 25, 1970, that the defendant was presently sane. On May 26, 1970, counsel for the defendant addressed a letter to the Indigent Defender Board for funds for the psychiatric examination of defendant. The letter concluded:
"Prior to the time of the hearing, I assumed that the commission appointed by the court would properly perform its duty, and that there would be no need for me to employ another expert to conduct such testing. Now that the commission has presented its report and the court has overruled my motions, it appears that the only remedies are to appeal after trial, or to employ experts at my expense, in order to properly present the defendant's case under his plea of not guilty by reason by insanity.
"I feel that the obvious dereliction of duty by the sanity commission will form a solid basis for an appeal after trial, but since the defendant's sanity will be an issue at trial, expert testimony will be needed at that time, and the experts appointed by the court simply have not sufficiently investigated the matter to give this testimony. Further inquiry into the defendant's mental condition, under the circumstances, is absolutely required. I therefore respectfully request that the Board approve reasonable expenditures in the amount of $200.00 for psychiatric testing and evaluation, and in whatever amount is necessary to cover the fees of at last one expert who will be called to testify on behalf of the defense."
On June 4, 1970, James E. Clark, Chairman of the Indigent Defender Board, addressed a letter to defense counsel, in which he stated: "* * * I mailed a letter to each member of the Board, enclosing copy of your request. One of the Board members, Mr. Burton, was absent from Shreveport and is not scheduled to return until June 12. However, the remaining four Board members, including myself, recommended that your request be granted and I communicated this request to Judge Middleton by letter dated May 28, 1970." Mr. Clark then went on to say that Judge Middleton had informed him that the recommendation of the Board of counsel's request had been disapproved.
Herein, counsel for the defendant argues:
"Article 646 of the Louisiana Code of Criminal Procedure provides the defendant the right to an independent mental examination by a physician of his choice. The defendant in the present case was an indigent and of course unable to retain a qualified psychiatrist for detailed examination. He applied to the Indigent Defender Board for the necessary funds and his request was approved. The trial judge refused to approve the grant and the defendant was thus unable to present to the court the findings of his own psychiatrists.
"By virtue of his poverty and circumstances, the defendant was denied the right to an independent physician guaranteed by Article 646 of the Code of Criminal Procedure."
Article 646 of the Code of Criminal Procedure provides:
"The court order for a mental examination shall not deprive the defendant or the district attorney of the right to an independent mental examination by a physician of his choice, and such physician shall be permitted to have reasonable access to the defendant for the purposes of the examination."
Had defense counsel applied for the examination of defendant by a private psychiatrist or physician at the time he applied for the appointment of a Sanity Commission, his request would undoubtedly have been granted. The reason for his not applying, stated in his letter, supra, to the Indigent Defender Board, was the presumption *321 that the Sanity Commission would do its duty and there would be no need for the employment of another expert.
We have found, supra, that the Sanity Commission did do its duty, and that the trial judge committed no reversible error in finding the defendant presently sane. Under the facts and circumstances existing in this matter on June 8, 1970, the day the trial commenced, we do not find that the trial judge abused his discretion in refusing counsel's application for the appointment of an expert to thereafter mentally evaluate defendant. Cf. State v. McManus, 187 La. 9, 174 So. 91. The result of such an examination was speculative and would have caused great delay and a resetting of the date of trial. As stated supra, prior to trial on June 8, 1970, defendant had been examined by two competent doctors; in addition to finding him competent to stand trial, they had expressed their expert opinions, supra, as to his sanity at the time the instant offense was committed. We do not find that the defendant suffered any prejudice by the trial judge's ruling; we find no reversible error.
Specification of Error No. 2 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, Justice (dissenting).
This case is badly postured before us because the trial court, the State's attorney, and the defendant's counsel have all assumed that this defendant had a court-appointed sanity commission inquire into both his competency to stand trial (present insanity) and his mental state at the time of the offense. The trial judge commented: "All that was brought out in the court, whether he was sane at the time of the crime and whether he was presently sane. Both members of the commission were questioned extensively in court. The Court as well as the jury felt that he was sane." (Emphasis here and elsewhere has been supplied.) The errors in this case emanate in large part from the erroneous assumption apparently held by all involved that there had been a sanity commission inquiry into whether defendant was sane or insane at the time the offense was committed. There was no sanity commission examination regarding the defendant's state of mind at the time the offense occurred.
Apparently in this case the defendant's entire case depended upon his plea of not guilty by reason of insanity, for all of the bills of exception were taken to rulings on his competency to stand trial and to rulings at the trial before the jury in regard to his sanity at the time of the commission of the offense.
Code of Criminal Procedure Article 644 provides for the appointment of a sanity commission to make an examination of the defendant and to report on his present capacity in order that the court may determine whether he has the mental capacity to stand trial and to assist counsel. Article 650 provides that when the defendant enters a combined plea of "not guilty and not guilty by reason of insanity", the court may appoint a sanity commission as provided in Article 644 to make an examination of the defendant's mental condition at the time of the offense. In the instant case defendant's counsel filed a motion for a sanity commission under Article 644, which was granted. At the time of the granting of this motion and the appointment of a sanity commission, no plea had been entered by the defendant, and the only investigation which was made or could be made by the sanity commission in compliance with the order of the court was into the present mental capacity of the defendant to proceed to trial and to assist counsel. The report of that commission made a conclusion as to the present mental capacity of the defendant and his ability to assist counsel and to stand trial. There is nothing in the report *322 dealing with his mental capacity or sanity at the time the offense was committed.
After a hearing the trial court ruled that the defendant was presently sane and had the mental capacity to assist counsel in defense and to stand trial. Counsel for defendant reserved a bill to this ruling and also reserved a bill to the denial of a motion to appoint a new commission on that same date. The defendant was immediately arraigned and pleaded not guilty and not guilty by reason of insanity.
It is most pertinent to note that the motion filed by counsel for defendant before the entering of any plea was a motion only to have a sanity commission inquire into the present mental capacity of the defendant and his ability to assist in his defense. The report filed by that commission concluded that "* * * he is able to cooperate with his attorney and participate in his defense". After the hearing and the denial of his motion for a new sanity commission and the plea of not guilty and not guilty by reason of insanity, the attorney for the defendant filed a motion with the court for approval of an expenditure by the Indigent Defender Board for the payment of necessary fees to secure psychiatric evaluation and to obtain expert testimony on behalf of the defendant. The Indigent Defender Board approved the expenditure of the funds. Nevertheless the trial judge, who had the final determination, refused the motion for this expenditure.
The trial court never appointed a sanity commission in compliance with Article 650. That article reads:
"When a defendant enters a combined plea of `not guilty and not guilty by reason of insanity,' the court may appoint a sanity commission as provided in Article 644 to make an examination as to the defendant's mental condition at the time of the offense. The court may also order the commission to make an examination as to the defendant's present mental capacity to proceed. Mental examinations and reports under this article shall be conducted and filed in conformity with Articles 644 through 646."
Official Comment (b) under that article reads: "The court's authority to order also an examination of the defendant's present capacity to proceed will promote trial convenience. It does not give rise to the objections inherent in the ordering of an examination as to the defendant's mental condition at the time of the crime before he has elected to urge that defense. * * *
As the comment points out, the court cannot inquire into the sanity or insanity of the defendant at the time of the commission of the crime before he has pleaded such a defense. Here, where the issue raised by the defendant and accepted by the court under its minute order was to determine whether this defendant was mentally competent to proceed to trial, no plea could be entered for him until his competency to plead or proceed was determined. See C.Cr.P.Art. 642. It is after a determination of defendant's competency (if such a plea has not been previously entered) that a plea of not guilty by reason of insanity may be entered. It is only after a plea of not guilty by reason of insanity that a sanity commission may make inquiry into the defendant's sanity at the time of the commission of the crime. Code of Criminal Procedure Article 650 provides, and the comment thereunder states, that once the plea of not guilty by reason of insanity is made, it is permissible to inquire also into whether a defendant is at present capable of proceeding to trial. The converse of that proposition is not true, as is noted in the official comment. There are inherent objections to ordering an examination of the accused's mental condition at the time of the offense when the only motion presented to the court prior to a plea of not guilty by reason of insanity is a motion to inquire into his present capacity to proceed.
This accused has never had a sanity commission or any physician examine, *323 evaluate, or inquire into his mental condition at the time of the offense. Yet he has pleaded not guilty by reason of insanity, and this claim of insanity appears to be his entire case.
The record discloses that the physicians who were acting under the sanity commission appointed to inquire into present sanity stated on the trial of the case before the jury that the defendant had a psychopathic personality, a mental age of seven years, and paranoid tendencies. From their testimony at the trial it appears that they did not discuss with the defendant the occurrence out of which the charge arose or inquire into his condition at the time of the offense. They merely testified as to the defendant's condition as it appeared to them when they examined him for present capacity to proceed to trial. Their knowledge of the crime charged was gathered from a police report describing the offense. They also considered psychological and psychiatric reports made in other years while defendant was in military service and upon another occasion when the defendant while under indictment was declared insane and incarcerated in a security hospital but later was declared sane and stood trial.[*] The facts related above by the physicians who acted on the one sanity commission ordered are sufficient to establish that this defendant's plea of not guilty by reason of insanity was not a frivolous plea but indeed was sincere and was defendant's only plea.
Although certainly the sanity commission may be requested by motion by the State or the defendant after a plea of not guilty by reason of insanity, under Article 650 the plea itself presents that motion. The permissiveness of the article would relate to the trial judge's discretion to order a merited sanity commission ex proprio motu or on motion of the State or the defendant. Our record reflects that this accused's plea was sincere and sufficiently well founded to warrant a commission. Certainly the court could have  should have here  ordered such a commission sua sponte. Except for the existence of the erroneous assumption previously noted  that such a commission had been appointed  I believe that the court would have so responded.
Not only has this accused not had the benefit of a sanity commission, he has been denied the right to have an examination by an expert for the purpose of presenting evidence at his trial on the issue of his innocence by reason of insanity at the time of the offense. The presumption of innocence is stripped from a defendant and the burden of establishing his innocence is placed upon him only when he pleads his innocence by reason of insanity at the time the offense was committed. Code of Criminal Procedure Article 652 states: "The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence." Since this is the only occasion when the defendant must come forward with the burden of establishing his innocence, we should be most careful that he is given all the tools necessary to carry that burden.
*324 Moreover, Article 653 provides: "* * Other evidence pertaining to the defense of insanity at the time of the offense may be introduced at the trial by the defense and by the district attorney." It is anticipated that a defendant be allowed to make a full defense before a jury in order to carry the burden of establishing his innocence by reason of being insane at the time of the commission of the offense. On the assumption that the defendant knew that the physicians who had examined him on the sanity commission for present capacity would testify adversely to his plea of insanity at the trial (and I think the assumption is safe), the court had foreclosed the possibility of his presenting any convincing evidence to the contrary. To this defendant whose protestation of innocence depended upon establishing insanity, a trial before the jury would appear to be an almost vain and useless thing. It would hardly be conceivable that a jury would be convinced by any amount of lay testimony to disregard the testimony of the parish coroner and a qualified psychiatrist. If the State had been dissatisfied with a sanity commission finding, it could have presented additional and even contrary expert evidence to defeat the plea. A defendant financially able could present contrary expert testimony to support his plea. If a rich man may secure examinations by psychiatrists and their testimony in court, certainly an indigent is entitled to the same right when he is discharging that heavy burden of establishing innocence. I am of the opinion that the trial court erred in two respects. First, the trial court, apparently acting on the belief that a sanity commission had properly inquired into sanity at the time of the offense, erred in failing to appoint a sanity commission after the plea of not guilty by reason of insanity. Second, even if there had been a sanity commission under Article 650, I am persuaded that when Article 652 places the burden upon a defendant to establish by a preponderance of the evidence his innocence by reason of insanity at the time of the offense, the indigent is entitled to have an expert appointed by the court in order that he may discharge that burden. See 110 U.Pa.L. Rev. 1061. I would grant to the trial court the discretion to determine the seriousness of the plea. Here, where the record reflects that this is a serious plea in which there may be merit and which the defendant should have a right to test, and where there has been no sanity commission, I am of the opinion he was certainly entitled to have independent medical evidence as part of his defense, it being essential next only to counsel.
I respectfully dissent.
NOTES
[1] The following answer by the State to defendant's Motion for Bill of Particulars will apprise the reader of the facts the State intended to prove at defendant's trial and evidently did prove to the jury's satisfaction.

"1.
"The crime was committed on the morning of December 11, 1969, in a Shreveport Police Department automobile parked in the 3700 Block of Tate Street, Shreveport, Louisiana.
"2.
"After Officer K. R. Jackson had placed Henry Earl Gray under arrest and had placed Gray in the back seat of the Police Car, Officer Jackson got in the front seat of the Police Car and then Gray attacked Officer Jackson with a knife inflicting wounds on Officer Jackson's head. Gray also grabbed Officer Jackson's pistol from his holster and attempted to shoot Officer Jackson and made the statement that he was going to kill Officer Jackson.
"3.
"In the perpetration of the offense Henry Earl Gray used as weapons a white handled knife and a pistol. * * *"
[*] It is to be noted that if the physicians who testified at the trial had actually composed a sanity commission for the purpose of inquiring into sanity at the time of the offense under Code of Criminal Procedure Article 650, the commission very likely could have been challenged for failure to discharge its duties properly. While their testimony is more than adequate to support a finding that they made an examination and report as required by Article 644, it is difficult to believe that they had carried out a competent examination for a conclusion required under an inquiry into the mental state of the defendant at the time he committed the offense. Since there was no commission, the coroner and the psychiatrist who testified before the jury were not the court's experts but were in fact the State's witnesses. Since the law requires the defendant to carry the burden of proof, the State was not obligated to call the witnesses, and of course the defendant could not gain from an attack upon their credibility since he was afforded no opportunity to offer contrary proof.