106 645
e119 381

No. 14,215.

STATE OF LOUISIANA VS. WILLIAM DOWDELL.

## SYLLABUS

A defendant indicted under a statute making it a crime "to shoot at any dwelling house, any person being lawfully therein," who is shown by the evidence to have lain in wait at night until the occupant of a dwelling house came out upon the gallery and shot at him while there, cannot require the court to

State vs. Dowdell.

charge the jury that, "if he shot at the prosecuting witness with intent to kill him, but without any intent to shoot at the dwelling house, he could not be guilty of the charge." "This charge does not negative the fact that the accused, 'while shooting at the prosecuting witness,' 'was not aware that he was 'at the time shooting at the house.'"

The purpose of the shooting is, under the statute, an immaterial fact.

APPEAL from the Fifth Judicial District, Parish of Jackson.— Machen, J.

Walter Guion, Attorney General, and A. B. Hundley, District Attorney (Lewis Guion, of Counsel), for Plaintiff, Appellee.

C. P. Thornhill, for Defendant, Appellant.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The indictment returned against the defendant in this case charged that he "did willfully, wantonly, feloniously and of his malice aforethought shoot at and into a certain dwelling house, to-wit: the dwelling house of Turner Lawson, where him, the said Turner Lawson, and his family, were at the time residing."

He was found guilty as charged and sentenced to ten years imprisonment in the penitentiary. He has appealed.

On the trial of the cause defendant's counsel requested the court to charge the jury, first, that if the proof does not show that the defendant did shoot deliberately at the dwelling house as charged in the indictment, they must acquit him.

Second—If the proof shows that the defendant shot at the prosecuting witness with intent to kill him, but without any intention to shoot at said dwelling house, they cannot find him guilty under the charge, which charge the court refused to give, and counsel reserved a bill of exception.

The District Judge made the following statement at the foot of the bill, which was reserved to this ruling:

The court gave the first part of the charge literally as written by counsel; that is, that the shooting must be deliberately done, but refused to give the second charge, for the reason that the accused was lying in wait in the nighttime in front of the house, and, when the old man living in the house walked out on his front gallery, the accused

fired two shots, both of the balls striking the house. The evidence does not show whether the shots were fired to kill the old man or whether they were fired to intimidate the inmates of the house—at least, it was maliciously done. At any rate, the court was of the opinion that the accused had nothing to complain of, because he was indicted and convicted of the lesser offense, instead of the greater offense of lying in wait and shooting at, with intent to murder, and that he was not injured thereby.

The defendant made an application for a new trial for the reason that the verdict was contrary to the law and the evidence, and because the court had refused to give to the jury the special charges which he had been requested to give. The court declined to grant a new trial. In the bill taken to this ruling the court stated that the accused had had a fair and impartial trial and been ably defended by counsel; he reiterated the statements made by him in the bill of exceptions which had been reserved by defendant relative to the special charges which defendant had asked to have given.

## OPINION.

The defendant was charged with violation of the 8th Section of Act No. 8 of the Extra Session of 1870, which declares that "whoever shall shoot at any dwelling house, school house, church house or otherwise, any person or persons being lawfully therein, shall on conviction be imprisoned at hard labor not exceeding ten years and fined not exceeding two thousand dollars."

It will be seen that the statute itself makes neither particular intent, motive, purpose nor knowledge enter as essential factors for the commission of the offense. The indictment, however, in this particular case charges the defendant with having shot at the dwelling house "wilfully, wantonly, feloniously and of his malice aforethought." The object or purpose of the shooting is not stated. The State did not undertake to say whether the shot was directed primarily against persons and incidentally at the dwelling house, or whether it was directed against the habitation, but left these and the purpose or object of the shooting to be determined by the jury if it was necessary that it should be determined by and through the evidence.

The special charge asked for assumes as one of its premises that the intention of the shooting was illegal and felonious; that the defendant shot at the prosecuting witness with intent to kill him, but follows this

up with the statement that he did not "intend" to shoot at the dwelling house, and therefore his act did not fall under the terms of the statute and he could not be convicted under it. He urges, as we understand his position, that defendant's shot must have been primarily directed by him at the dwelling house itself; that it is not sufficient that in shooting at a person and not intending or knowing that his shot would be in the line of a dwelling house, the shot would in point of fact take such a direction. The facts of this case do not warrant this argument.

The charge was evidently framed in order to make it fall under the case mentioned in Section III of Wharton's Criminal Law, 9th Edition, "where the assailant has his intention fixed on a single criminal object, but, while affecting such object, he accidentally and against his will effects, by the instruments used, another criminal object." But it does not negative the fact that defendant when shooting at Lawson was not aware that he was at the same time while doing so "shooting at the house."

Defendant must be presumed to have known of the existence of the statute with a violation of which he stands charged, and to have known the consequences of a violation of that statute. When he meditated an attack upon Turner Lawson while standing upon the gallery of his own dwelling house, he must have contemplated the possibility or probability of his illegal act being attended with peril to others or to property.

He must be taken to have intended the natural and probable consequences of what he did and to have risked the legal consequences to himself.

It has been held generally that any formed design of doing mischief is called malicious, whether the mischief be intended to fall upon a particular person or upon any person who may be within its range.

Malice is held to denote not only malevolence to a particular individual, but the act of a generally wicked, depraved and malignant spirit, of a heart regardless of social duty and deliberately bent on mischief, is malicious.

The proof or presumption of malice becomes more and more clear as the probability of evil consequences resulting from a particular act must have been known by the person doing the act.

Wharton, in Section 120 of his work, lays down the principle that, where an intent exists to do wrong and an unintended wrong ensues

as a natural and probable consequence, the unintended wrong derives its character from the general evil intent. A general malevolent purpose to break the law, for instance, or to inflict injury, irrespective of any particular malice, gives color to a particular wrongful act committed in execution of the general malevolent purpose. In other words, when there is a general intent to do evil, of which evil the wrong actually done may be looked upon as a probable incident, then the party having such general intent is to be regarded as having intended the particular wrong. A man using a deadly weapon in a crowd must be regarded as intending to kill all within range of the weapon, whether as a primary object or as incidental to such prime object. And a general intent to do evil such as to cover all the natural probable consequences of the act may be inferred from the circumstances of the act.

Recklessly shooting into a crowd is an assault, and an assault on several indiscriminately is an assault on each individual. So it is no defense to an individual for shooting into a house that the object was to hurt some one who, it turned out, was not actually in the house. Wharton Crim. Law, Sec. 608 (9th Ed.).

The Legislature has not informed us in Act No. 8 of 1870 what the particular mischief was which it was seeking to prevent. It is enough for us to know that the fact of shooting at a dwelling house in which persons were residing was deemed so perilous or injurious as to justify it in making the doing of that act *per se* a crime, without a reference to intent, motive, purpose or knowledge. A person doing so perilous an act as shooting is bound at his peril not to shoot "at" a dwelling house, a person or persons being lawfully therein.

The function of imposing indictability for pernicious acts, irrespective of intent or purpose in doing the act, is one which has been frequently exercised by the Legislature, from a necessity of which it is the judge. It may be deemed indispensable to the public welfare or good that certain acts should be absolutely and even arbitrarily prohibited and that the State should be relieved from the necessity of proving motive, purpose or intent. (See Wharton, Sec. 88.)

Parties may be criminally responsible for unforeseen consequences, although against their wish, if they ensue from an act which is itself unlawful and in its original nature wrong or mischievous. (Wharton, Sec. 87.) Particular consequences of an illegal act whose natural probable results the law seeks to prevent by making the act *per se* criminal, do not stand excused because they may in fact have been unintended.

Where the statute makes the doing of a particular act indictable, irrespective of intent or purpose, these particular matters do not entei as factors for the defense, and evidence and instructions in respect to them are not pertinent.

The question before us is not whether under an indictment for shooting at another, or shooting at another with a certain specific intent, the jury would be authorized to return a verdict of shooting at a house, persons being lawfully therein, if the evidence showed that state of facts, but whether under an indictment brought directly upon a special statute making the act of shooting at a dwelling house, persons being lawfully therein, an indictable offense without reference to the intent with which the shooting was done, the defendant had the legal right to claim that the existence in him of a particular intent in shooting at the house withdrew his act from falling under the terms of the statute, or the failure on his part to have done the act with a particular intent relieved him from criminal responsibility.

We do think the case was not one calling for investigation of the defendant's intent, and that the failure of the court to give the requested charge furnishes no ground for reversal.

In the case at bar we ascertain under the judge's statement that the shooting was directed at Lawson, while standing on the gallery of his own dwelling, his family being therein. The shooting "at the house" and the "shooting at Lawson" were concurrent, simultaneous, illegal cats. Each, separately, was subject to indictment.

It cannot be claimed that legal responsibility for "shooting at the house" was lost because in " so shooting" the intent was to shoot at a person in the house.

The District Attorney elected to make the shooting at the house (the lesser crime) the object of the prosecution.

The judgment is affirmed.