278 So.2d 121 (1973)
STATE of Louisiana
v.
George "Scottie" SCOTT.
No. 52827.
Supreme Court of Louisiana.
May 7, 1973.
Rehearing Denied May 29, 1973.
*123 Calvin W. Eason, Jr., for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant George "Scottie" Scott was charged by a bill of information in that he did "on or about the 12th day of February in the year of our Lord, One Thousand Nine Hundred and Seventy-two (1972)... unlawfully distribute a certain controlled dangerous substance, viz.: heroin, in violation of LSA-R.S. 40:971(a)(1)...."
The statute under which he is charged provided:
(a) Except as authorized by this subpart, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance; ....
After a trial by jury, Scott was found guilty and sentenced to imprisonment for 23 years.
It has been suggested that there is error patent on the face of the record in that the bill of information does not charge that the accused did "intentionally" distribute "a certain controlled dangerous substance, viz.: heroin in violation of LSA 40:971(a)(1)." Although no motion to quash or bill of exceptions appears in the record advancing this contention, it is examined by the court as an alleged error patent on the face of the record.
Article 464 of the Code of Criminal Procedure defines the nature and content of the indictment in these terms:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
Strict construction of indictments has been decried as a blemish and inconvenience in the law which enabled more offenders to escape by the over easy ear given to exceptions in indictments, than by their own innocence. Hale, History of Pleas to the Crown (1st Ann.Ed.1847). Despite this caveat to judges, it remains a mandate in the law to draft indictments in such a manner that they satisfy the constitutional right of the accused to "be informed of the nature and cause of the accusation against him" (La.Const. art. 1 § 10), and, at the same time, requirements for drafting the indictment should not create technical traps for district attorneys. It was not necessary under these principles or under statutory guidelines for the indictment here to charge that the accused "intentionally" distributed heroin.
*124 Article 10 of the Criminal Code defines criminal intent as specific and general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
A classic illustration of a statute charging a crime where specific intent is an element necessary to be charged in the indictment (where the short form is not used) is Article 30(1) of the Criminal Code. That article defines murder as "the killing of a human being, (1) When the offender has a specific intent to kill or to inflict great bodily harm ...." In charging the offense of murder, therefore, the indictment, following the general rule of Article 464, must state the special mental element of the crimethat is, it is necessary for the charge to contain a reference to "specific intent". On the other hand, it is not necessary in offenses requiring general criminal intent to allege that the act was intentionally done. In short, the normal mens rea of general criminal intent need not be specifically stated.
This conclusion is supported by the language of Article 11 of the Criminal Code providing that "in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent'," and by Article 472 of the Code of Criminal Procedure which emphatically states: "In offenses requiring only a general criminal intent, the indictment need not allege that the act was intentionally done."
Reference to the statute defining the crime in the instant case (La.R.S. 40:971(a)(1)) makes it clear that the words "knowingly or intentionally" are used disjunctively since "the word `or' indicates the disjunctive." La.Code Crim. Proc. art. 6. It follows that the pertinent language of the statute relied upon by the prosecution ("it shall be unlawful for any person ... intentionally: To... distribute ... a controlled dangerous substance ...") has reference to general criminal intent, as Article 11 of the Criminal Code declares. As just pointed out, in an offense requiring only "general criminal intent," Article 472 of the Code of Criminal Procedure provides that "the indictment need not allege that the act was intentionally done."
The crime charged here is distribution of a controlled dangerous substance without regard to the intent of the wrongdoer. In the context of this case it is the "distribution" or the act of "delivery" (La.R.S. 40:961(13)), of the dangerous substance which constitutes the crime. And in the ordinary course of human experience the circumstances indicate the offender must have adverted to the prescribed criminal consequences as reasonably certain to result from his act. In such a case the intent with which the act is done is of no consequence. State v. Standard Petroleum Products Co., 176 La. 647, 146 So. 321 (1933); State v. Quinn, 131 La. 490, 59 So. 913 (1912); State v. Dowdell, 106 La. 645, 31 So. 151 (1902); State v. Southern Ry. Co., 122 N.C. 1052, 30 S.E. 133 (1898); 1 Wharton's Crim. Law § 88.
Like most offenses, the distribution of heroin requires a general, as distinguished from a specific, criminal intent. In State v. Hardy, 232 La. 920, 95 So.2d 499 (1957), the defendant was charged with contributing to the delinquency of a juvenile. The bill of information made no reference to intent, notwithstanding that the statute (La.R.S. 14:92) read: "Contributing to the delinquency of juveniles is the intentional enticing, aiding or permitting..." (emphasis added). In holding that the charge was legally sufficient *125 the court decided that the manner in which the word "intentional" is used in the statute denotes general criminal intent, and under the law general criminal intent does not have to be alleged in the bill of information. The similarity between the Hardy Case and the case at bar is striking, making that unanimous holding authoritative and persuasive here. There is, therefore, no error patent on the face of the record insofar as the validity of the bill of information is concerned.
Six bills of exceptions were reserved during the course of the trial. They are considered seriatim hereafter.

Bill 1
Because the judge found that prospective juror Mose Thomas was unable to read and write the English language with sufficient facility he was excused from service. La.Code Crim.Proc. art. 401. Defense counsel objected, the objection was overruled and this bill was reserved.
In State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968), we upheld the requirement, that a person be able to read and write the English language to be qualified for jury service, against an attack that the requirement was discriminatory and prejudicial, depriving the accused of a jury representing a fair cross section of the local population.
The trial judge's examination of this prospective juror elicited the response that he could not read and write. Closer questioning disclosed that he was a laboring man, with a fourth grade education, who rarely reads. Often he needed the assistance of his children to read simple letters from members of his family. The codal requirement that he be able to read and write the English language, in the judge's opinion, contemplates that his proficiency be at a higher level than that which he demonstrated. The judge felt that Thomas would have trouble serving as a juror. Accordingly, the prospective juror was excused.
There is no error in this ruling. The question of a juror's qualifications is addressed to the sound discretion of the trial judge within the bounds prescribed by law. And, although the trial judge's ruling in these matters is undoubtedly subject to review, it will not be disturbed in the absence of clear abuse. La.Code Crim.Proc. art. 401, 787; State v. Brazile, 229 La. 600, 86 So.2d 208 (1956).

Bill 2
The State's attorney was questioning Jack Hebert, a deputy sheriff in charge of the narcotics division of the Calcasieu Parish Sheriff's Office. The testimony being given concerned the reputation and reliability of the State's undercover agent, Elray Fontenot, who worked under his supervision. Hebert's testimony also touched upon the operations of his division affecting narcotics investigations. When Hebert testified that he had not worked on the instant case, defense counsel objected to his testimony, arguing that it was improper to permit Hebert to testify concerning a case he did not work on. This bill was reserved to the overruling of this objection. Principally, as the bill is understood, defense counsel is complaining of the refusal of the trial judge to strike the testimony already given by the witness.
There is no error in the ruling. The testimony outlining the procedure of the Sheriff's office in such cases was an explanation of how undercover agents were used in these cases. As such the testimony was relevant and material to corroborate the testimony of the undercover agent. Moreover, once the answers were admitted without objection, a belated attempt to have the testimony retrospectively stricken from the record could not succeed.

Bill 3
Elray Fontenot, the undercover agent, and the State's principal witness, was under cross-examination. He was *126 being questioned about his arrest and his guilty plea to a charge of possession of marijuana in the State of Texas. The evidence was admitted as a defense attack on the credibility of the witness. La.R.S. 15:486. However, Fontenot admitted the arrest and guilty plea. But despite this admission defense counsel persisted in a protracted cross-examination on details of the incident which the trial judge found had already been fully explored.
In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel. (La.R.S. 15:275)
No abuse of the discretion vested in the trial judge appears from the record on this bill of exception. The bill is without merit.

Bill 4
Undercover agent Elray Fontenot was being cross-examined by defense counsel concerning his past activities. As he replied to the questions propounded, tending to uncover his sometimes illegal and unexemplary past conduct, he requested permission of the judge to explain his answers. When granted permission he explained why he was being used as an undercover agent and why he was able to succeed in that role. A "nice fellow" could not have bought drugs from the defendant, he said. "And if I hadn't shot heroin at the time that I did I wouldn't be here to testify now. Scott right there wouldn't let me testify ...."
Whereupon, defense counsel objected to the unsolicited statement incriminating Scott, and moved for a mistrial. The objection was overruled and the motion was denied. The judge then instructed the jury to disregard the witness' statement, feeling this admonition cured any adverse effect which may have resulted from the incident.
Even if an adverse effect could be said to result from the statement, it is doubtful that it was objectionable. The statement was made in explanation of an answer to a question propounded by defense counsel. The statement was also relevant and material to the witness' testimony which he had a right to explain. And, if objectionable, the possible adverse effect was cured by the trial judge's admonition to the jury. The action of the trial judge was proper under Article 771(2) of the Code of Criminal Procedure:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * * * * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

Bill 5
The trial judge denied a motion attacking the constitutionality of the Uniform Narcotic Drug Law in effect at the time of the offense in question, and under which Scott was charged. He also denied a motion for a mistrial based upon the contention that women were improperly excluded by State law from the general venire from which the petit jury was selected.
*127 Apparently the attack on the constitutionality of the statute has been abandoned, for we find no mention of it in brief. In any event, the constitutionality of the statute has been upheld in this Court, except insofar as it attempted to regulate amphetamines, barbiturates, and hallucinogens. State v. Welkner, 259 La. 815, 253 So.2d 192 (1971).
The claim that women were improperly excluded from jury service is also without merit. On a number of occasions recently, we have held that Louisiana's constitutional and statutory provisions, requiring women to file with the Clerk of Court of the parish in which they reside a written declaration of their desire to be subject to jury service before they can be selected, impairs no right of the accused. La.Const. art. 7 § 41; La.Code Crim.Proc. art. 402; State v. Enloe, La., 276 So.2d 283; State v. Washington, La., 272 So.2d 355 (1973); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Dees, 252 La. 434, 211 So.2d 318 (1968); State v. Reese, 250 La. 151, 194 So.2d 729 (1967); State v. Clifton, 247 La. 495, 172 So.2d 657 (1965). The United States Supreme Court finds no constitutional infirmity in such legislation. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). Cf. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).
There is no merit to this bill.

Bill 6
Upon sentencing of the accused to serve 23 years in the Louisiana State Penitentiary or other institution to which he may be committed by the Department of Corrections, defense counsel objected that the punishment was cruel and unusual. When the objection was overruled, this bill was reserved.
In his remarks accompanying the sentence the trial judge observed that the heroin the accused was charged with distributing was the largest volume of heroin ever involved in any single case before that court. "These thirty packets," he remarked, "could be cut to approximately one hundred and fifty normal doses or fixes...."
Punishment for crimes is a legislative matter. Attacks on the nature and severity of sentences imposed are not allowed unless the law upon which the conviction and sentence is based is found to be unconstitutional. The punishment imposed here is within the limits of the statute and cannot be regarded as cruel or excessive. La.R.S. 40:971(b)(1). See also La.Const. art. 1 § 12; La.Code Crim.Proc. art. 878; State v. Howard, 262 La. 270, 263 So.2d 32 (1972); State v. Vittoria, 224 La. 258, 69 So.2d 36 (1953).
Only an extraordinary abuse of the trial judge's discretion would warrant setting aside this sentence. In view of the recited facts, there is no abuse of discretion. This bill is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
TATE, J., concurs and assigns written reasons.
CALOGERO, J., concurs with written reasons.
BARHAM, J., dissents and assigns reasons.
TATE, Justice (concurring).
The writer concurs in the disposition of the errors alleged by the bills of exceptions. *128 He also concurs in the majority's refusal to hold the bill of information fatally defective.
Unquestionably, under our law, guilty knowledge is required for a violation of the narcotics lawin this case, actual knowledge that the substance distributed was heroin and a showing (beyond possession) of an intent to distribute it. Mere possession would not be sufficient; that is a different and lesser crime (and, even for that, knowing illegal possession of an illegal substance must be proved).
We have repeatedly held that guilty knowledge is necessary for conviction of narcotics violations. See the jurisprudence from State v. Johnson, 228 La. 317, 82 So. 2d 24 (1955) on, see many citations at State v. Kreller, 255 La. 982, 233 So.2d 906, 908 ("The jurisprudence of this Court is now legion", etc.). In fact, the statute now incorporates this jurisprudence by providing that a person must "knowingly or intentionally" violate it. See La.R.S. 40:971, quoted in the majority opinion.
Thus, for instance, the cases hold it is not sufficient to prove possession or to prove merely an act in violation of the narcotics law. The state cannot rest upon proof of the act under La.R.S. 15:444: "If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act. * * *" For, as stated in State v. Johnson, 228 La. 317, 82 So.2d 24, 30 (1955), "The crime of unlawful possession of narcotic drugs as denounced by law cannot exist without proof of guilty knowledge." See Note, 17 La.L.Rev. 229 (1956); Note, 18 La.L.Rev. 340 (1958); Annotation, "Narcotics-Possession-What Constitutes", 91 ALR 2d 810, 821-829 (1963).
The majority opinion holding that only general criminal intent need be alleged in the information (indictment) must be understood in the light of this jurisprudence that, to sustain a conviction, guilty knowledge (i. e., a deliberate intent to possess or to distribute the illegal drug) must be proved. See distinction between "intent" and "knowledge", Lafave and Scott, Criminal Law, 195-202 (1972).
This is not to say that only general intent is required for all narcotics offenses. An offense of "possession with intent to distribute" may well require proof of the specific intent required in addition to guilty knowledge. See Lafave and Scott, cited above, at p. 202. Cf., proof under La.R.S. 14:27 ("Attempt") and decisions such as State v. Johnson, 249 La. 205, 186 So.2d 565 (1966).
In all fairness, our majority holding is to some extent inconsistent with previous decisions of this court holding informations insufficient under somewhat similar statutes. See, e. g., State v. Kelley, 225 La. 495, 73 So.2d 437 (1954) and State v. Herring, 211 La. 1083, 31 So.2d 218 (1947). I would be less hesitant in signing the majority opinion if it frankly faced and explained or overruled these seemingly contrary decisions, rather than ignoring them.
For these reasons, and with these limitations, I concur.
CALOGERO, Justice (concurring):
I am in accord with the disposition of the bills of exceptions made in the majority opinion. I concur on the issue of the adequacy of the bill of information for the reasons expressed in my concurring opinion in State v. Davis, La., 278 So.2d 130, No. 53,070 on our docket, decided this date.
BARHAM, Justice (dissenting).
As the majority has stated, the bill of information charges that the defendant did "unlawfully distribute a certain controlled dangerous substance, viz.: heroin, in violation of LSA R.S. 40:971(a)(1)". (Emphasis here and elsewhere is mine.) Again, as the majority states, the statute makes it a crime "for any person knowingly or intentionally" to distribute such a substance. The majority errs, however, in finding that *129 no special scienter is required under the statute, that is, that scienter is not an essential ingredient of the crime. It reaches this result by concluding that "intentionally" as used in the statute refers only to general criminal intent. It resorts to the definitions in the Criminal Code of specific and general criminal intent under Article 10 and to the provision in Article 11 that "* * * in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent'".
The majority finally chooses the language from Code of Criminal Procedure Article 472 that "In offenses requiring only a general criminal intent, the indictment need not allege that the act was intentionally done". It then finds that the statute under which this defendant is charged uses "knowingly or intentionally" disjunctively. I must agree that the statute as written makes the use of these terms disjunctive, for it uses the disjunctive "or". But I cannot understand under the majority's opinion that if these terms are used disjunctively, it can then decide that the State here relies upon "intentionally" under an information which charges merely that the defendant "unlawfully" distributed a controlled dangerous substance. Since the charge states only that the defendant "unlawfully" distributed the substance, the defendant may be found guilty, under the majority's rationale of disjunctive crimes, of "knowingly" distributing or "intentionally" distributing. I cannot, as the majority apparently does, permit a conjunctive charge of disjunctive crimes by reason of omission of choice.
Actually, if the statute is read as the majority has construed it, it becomes redundant. The majority's rationale requires us to understand that the Legislature meant to define two crimes: (1) When heroin is distributed by one with guilty knowledge and general criminal intent (having adverted to the prescribed criminal consequences as reasonably certain to result from his act), he has violated the statute. (2) If he has with specific intent made the distribution, he is also in violation of the statute. Under the majority's interpretation the statute reads: When one has "knowingly" and with general criminal intent or with general criminal intent distributed heroin, his act is unlawful. This is obviously not the intent of the Legislature.
This court must accord the presumption of wisdom and knowledge to the legislative branch, and must assume the Legislature acts reasonably and purposefully. "Knowingly" and "intentionally" have different meanings. As the majority construes this statute, however, "intentionally" can serve no purpose and has been included without cause or reason.
The Criminal Code (Title 14 of the Lousiana Revised Statutes of 1950) states in Article 11 that "intentional" and "intent" unless qualified have reference to general criminal intent. Although the crime in this case is not charged under the Criminal Code, I would find here that the Legislature has qualified "intentionally" by pairing that term with the term "knowingly". The use of both terms in the same statute makes "intentionally" refer to specific scienter.
The Legislature has obviously in the amendment of the pertinent section of Title 40 attempted to incorporate the long line of jurisprudence which had construed earlier statutes regulating drugs as requiring proof of guilty knowledge. We have said repeatedly there could be no crime in relation to possession of narcotics unless there was guilty knowledge. See State v. Johnson, 228 La. 317, 82 So.2d 24 (1955); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); and cases there cited. We have in numerous other cases held that when scienter is a quality of the statutory offense, it must be charged in the bill of indictment. State v. Herring, 211 La. 1083, 31 So.2d 218 (1947); State v. Kelley, 225 La. 495, 73 So.2d 437 (1954).
The majority here has departed from a settled principle of law without stating any *130 valid reason for the departure. I fear that the majority holding of no requirement for specials scienter in this casethat is, that scienter is not an essential ingredient of the crimewill fall by the wayside when evidence of other crimes and offenses is offered to prove guilty knowledge and intent.
I respectfully dissent.